595 A.2d 1135

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Ralston W. MERCHANT, Jr., Appellee.**

Supreme Court of Pennsylvania.

Argued March 8, 1991.

Filed July 31, 1991.

Reargument Denied Oct. 1, 1991.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Scott A. Bradley, Asst. Dist., Pittsburgh, for appellant.

Stuart Suss, Deputy Dist. Atty., West Chester, for amicus curiae Pennsylvania Dist. Attys. Ass'n.

James A. Ashton, Pittsburgh, for appellee.

David M. McGlaughlin, Philadelphia, for amicus curiae, Pennsylvania Ass'n of Defense Lawyers.

Before NIX, C.J., and FLAHERTY, LARSEN, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

Appellant, the Commonwealth of Pennsylvania, appeals from the order of the Superior Court vacating the judgment of sentence imposed upon appellee, following a bench trial, by the Court of Common Pleas of Allegheny County (Ridge, J.).

The relevant facts are as follows. On October 21, 1987, appellee, Ralston W. Merchant, Jr., was driving his car along Freeport Road in the Borough of Aspinwall when he was observed by two Borough of Etna police officers "driving in a very erratic manner crossing the double yellow

lines; in fact, almost hitting a vehicle coming in the opposite direction head on." (Notes of Testimony at 3). At the time, the Etna police officers were driving in a marked car through Aspinwall as part of their usual routine.[1] The officers proceeded to stop appellee and, after detecting a strong odor of alcohol and noting appellee's slurred speech, detained him while calling the Aspinwall police to the scene. Appellee failed three (3) field sobriety tests which were administered by the Aspinwall police. Thereafter, the Aspinwall police placed appellee under arrest. His subsequent blood and urine tests revealed blood alcohol content of .27 percent (blood) and .29 percent (urine). Appellee was charged with two (2) counts of driving under the influence (75 Pa.C.S., 3731(a)(1) and 75 Pa.C.S. 3731(a)(4)).[2]

At a pre-trial suppression hearing, appellee challenged the legality of the initial stop by the Etna police officers on the grounds that the police were acting outside the jurisdictional limitations for municipal police as delineated in the Statewide Municipal Police Jurisdiction Act.[3] The Act reads, in pertinent part, as follows:

§ 8953. Statewide municipal police jurisdiction

(a) General rule.—Any duly employed municipal officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth

1. It appears from the record that in patrolling their area, the Etna police routinely travelled through the Boroughs of Sharpsburg and Aspinwall to access Route 28, a limited access highway which crosses over the Borough of Etna. Neither counsel delved into the reasons why the Etna police used the exact route on which they were travelling.

2. § 3731 *Driving under influence of alcohol or controlled substance*
(a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:
(1) under the influence of alcohol to a degree which renders the person incapable of safe driving;

. . . . .

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.
75 Pa.C.S.A.

3. Act of June 15, 1982, P.L. 512, No. 141 § 4, as amended.

or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

(1) Where the officer is acting pursuant to an order issued by a court of record or an order issued by a district magistrate whose magisterial district is located within the judicial district wherein the officer's primary jurisdiction is situated, or where the officer is otherwise acting pursuant to the requirements of the Pennsylvania Rules of Criminal Procedure, except that the service of an arrest or search warrant shall require the consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which regularly provides primary police services in the municipality wherein the warrant is to be served.

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

(3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.

(4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable

effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

(6) Where the officer views an offense which is a felony, or has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

42 Pa.C.S. § 8953.

The trial court denied appellee's suppression motion, holding that the Etna police officers' actions fell within subsection 8953(a)(5). Moreover, the trial court held that "even if the arresting officer lacked authority to arrest the Defendant outside of the officer's jurisdiction, suppression of evidence is not the proper remedy." *See* Trial Court Opinion at 3.

On appeal, the Superior Court reversed the trial court, ordered the evidence suppressed, vacated the judgment of sentence, and remanded the case for a new trial. The Superior Court held that subsection (a)(5) of the Act granted no independent jurisdiction to municipal officers but, rather, must be read in conjunction with subsection (a)(4).[4] Unlike the trial court, the Superior Court held that the proper remedy for this allegedly unauthorized stop by the Etna police officers was the suppression of all evidence obtained subsequent to the "unlawful detention."

The Commonwealth petitioned this Court for allowance of appeal, which we granted.[5] The Commonwealth now raises two issues: whether the Etna police officers had jurisdiction under the Act to stop and detain the appellee; and

4. The court held as follows: "When the material in subsection (5), placed logically, we must assume, after subsection (4) is read, it appears that subsection (5) allows police officers, who are in the foreign jurisdiction on 'official business' under the guise of subsection (4), and who witness the commission of a crime or offense, to perform the same functions in the foreign jurisdiction that they can perform in their own jurisdiction in similar circumstances: namely detain the offender." *See Commonwealth v. Merchant,* 385 Pa.Super. 264, 268, 560 A.2d 795, 797 (1989).

5. 525 Pa. 579, 575 A.2d 111 (1990).

whether the suppression of evidence was the proper remedy where the alleged offense was the violation of the State-wide Municipal Police Jurisdiction Act.

Whenever we are confronted with a question of statutory interpretation we are guided in our analysis by the Statutory Construction Act of 1972.[6] That Act provides in relevant part as follows:

§ 1921 Legislative intent controls.

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.

. . . .

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

. . . .

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

1 Pa.C.S. § 1921.

§ 1922 Presumptions in ascertaining legislative intent. In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used.

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

. . . .

(5) That the General Assembly intends to favor the public interest as against any private interest.

1 Pa.C.S. § 1922.

§ 1923. Grammar and punctuation of statutes.

. . . .

(c) Words and phrases which may be necessary to the proper interpretation of a statute and which do not con-

6. Act of Dec. 6, 1972, P.L. 1339, No. 290 § 3.

flict with its obvious purpose and intent, nor in any way affect its scope and operation, may be added in the construction thereof.

1 Pa.C.S. § 1923.

§ 1928. Rule of strict and liberal construction.

. . . .

(b) All provisions of a statute of the classes hereafter enunciated shall be strictly construed.

(1) Penal provisions.

(2) Retroactive provisions.

(3) Provisions imposing taxes.

(4) Provisions conferring the power of eminent domain.

(5) Provisions exempting persons and property from taxation.

(6) Provisions exempting property from the power of eminent domain.

(7) Provisions decreasing the jurisdiction of a court of record.

(8) Provisions enacted finally prior to September 1, 1937, which are in derogation of the common law.

(c) All other provisions of a statute shall be liberally construed to effect their objects and to promote justice.

1 Pa.C.S. § 1928.

Our first inquiry must be directed to identifying the primary purpose of this Act, or, in the words of the Statutory Construction Act, "the object to be attained." 1 Pa. C.S. § 1921(c)(4).

Although neither party discusses the legislative history behind this Act or its predecessor, it is apparent to us that one of the principle objects to be attained by this Act was the promotion of public safety while maintaining jurisdictional police lines.[7] Thus the General Assembly described certain instances where extra-territorial police actions were authorized.

7. This in turn fosters local control over police, and discourages extra-territorial forays by outside law enforcement officers who are not subject to the control of the municipality: certainly a laudable goal.

In the present case, the Superior Court acknowledged the existence of the occasions where police may act outside their jurisdiction; however, that court refused to acknowledge the independent nature of each prescribed instance.

In *Commonwealth v. O'Shea*, 523 Pa. 384, 567 A.2d 1023 (1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990), we noted that "Section 8953 authorizes arrests, execution of search warrants and other official police conduct outside of an officer's primary jurisdiction in *six specific circumstances.*" *Id.* 523 Pa. at 397, 567 A.2d at 1029 (emphasis supplied). We also cited with approval the Superior Court case of *Commonwealth v. Ebersole*, 342 Pa.Super. 151, 492 A.2d 436 (1985), which held that the statute should be liberally construed to effectuate its purposes, one of which "is to provide police officers with authority to make arrests outside of their primary jurisdictions in limited situations." *Id.*, 342 Pa.Superior Ct. at 155, 492 A.2d at 438. *See, also,* 1 Pa.C.S. § 1928(c).

The Superior Court's holding that subsection (a)(5) must be read in conjunction with (a)(4) is inconsistent with our observation in *O'Shea* that there are "six specific circumstances." The lower court holding is also inconsistent with the liberal construction of the statute advocated by the Superior Court's own precedent as well as section 1928(c) of the Statutory Construction Act. 1 Pa.C.S. § 1928. Moreover, the Superior Court's analysis has no foundation or support in the grammatical and structural context of the statute.

 It is clear to this Court that each of the six circumstances enunciated by the General Assembly has its own rationale and justification for permitting police action outside their primary jurisdiction. Additionally, in order to justify the Superior Court's interpretation we would have to insert a conjunction between subsection (a)(4) and (a)(5), which clearly would be contrary to section 1923(c) cited above in that it would affect the scope and operation of the statute. See 1 Pa.C.S. § 1923(c).

Moreover, it is noteworthy that the predecessor Act made provision for police action outside primary jurisdiction in only one circumstance, i.e., hot pursuit.[8] The inclusion of additional instances of authorization indicates that the General Assembly intended to expand the powers of local police to protect the public, where such expansion would not adversely affect the ultimate goal of maintaining police accountability to local authority. Apparently, the General Assembly recognized that constructing impenetrable jurisdictional walls benefitted only the criminals hidden in their shadows.

Applying the foregoing discussion to the facts of the instant case, it becomes readily apparent that the actions of the Etna police officers in stopping and detaining appellee were authorized under section (a)(5) of the statute. Firstly, the officers were on "official business" in that they were on duty travelling their usual route as part of their routine responsibilities.[9] Secondly, when appellee drove his car in an erratic manner almost hitting an oncoming car, probable cause was established that an offense had been committed "which offense [was] a felony, misdemeanor, breach of the peace or other act which present[ed] an immediate clear and present danger to persons or property." Thirdly, the police, in uniform and a marked car, identified themselves as police officers. Finally, the officers limited the impact of their activities outside their primary jurisdiction by merely detaining appellee while awaiting the arrival of the Aspinwall Township police.[10]

8. 42 Pa.C.S. § 8901, repealed.

9. The Superior Court opinion seems to imply that the Etna police officers were on an unauthorized "visit" when they happened upon appellee. The record, however, does not support this implication.

10. This relinquishment of authority was correct procedure pursuant to subsection (c) of the statute, which reads as follows:

(c) Relinquishing authority—Whenever a municipal police officer exercises any power or authority over any person or event pursuant to the provisions of subsection (a)(3), (4), (5) or (6), the officer shall relinquish authority and control over any such person or event upon the request of the chief law enforcement officer, or a person authorized by him to make the request, of the organized law

■ For the aforesaid reasons, we find that the stop and detention of appellee by the Etna police in the Township of Aspinwall was statutorily authorized. Given our resolution of the Commonwealth's first issue there is no reason to address the second issue. We note, however, that without the finding that the stop itself was illegal under this Act, the Superior Court's discussion concerning the proper remedy for an illegal stop becomes theoretical, and hence should not be considered a binding interpretation of the law on the issue of appropriate remedy for a violation of this Act.

Accordingly, the order of the Superior Court is vacated and the judgment of sentence of the court of common pleas is reinstated.

FLAHERTY and ZAPPALA, JJ., concur in the result.

LARSEN, J., did not participate in the consideration or decision of this case.

CAPPY, J., did not participate in the decision of this case.

enforcement agency which regularly provides primary police services in the municipality.
42 Pa.C.S. 8953(c).