664 A.2d 151

COMMONWEALTH of Pennsylvania

v.

Patrick EISENFELDER, Appellant.

Superior Court of Pennsylvania.

Submitted July 24, 1995.

Filed Aug. 28, 1995.

436

⊙➞188

---

Jenny Steinen, Assistant Public Defender, West Chester, for appellant.

Stuart B. Suss, Assistant District Attorney, West Chester, for the Commonwealth, appellee.

Before McEWEN, TAMILIA and OLSZEWSKI, JJ.

TAMILIA, Judge.

Patrick Eisenfelder, age 18, takes this appeal from the February 21, 1995 judgment of sentence entered following a bench trial in which he was found guilty of possession of marijuana,[1] possession with intent to deliver[2] and possession of drug paraphernalia.[3] Immediately following trial, appellant was sentenced to serve two (2) years' probation. The charges

---

1. 35 P.S. § 780–113(a)(16).

2. *Id.,* § 780–113(a)(30).

3. *Id.,* § 780–113(a)(32).

stem from the following findings as set forth by the Suppression Court.

Officer Scott Alexander of the East Brandywine–Wallace Township's Police Department, was on "routine patrol" in Wallace Township. He was in uniform, and in a marked car. The time was 12:33 a.m., and Officer Alexander was proceeding down Chalfont Road in Wallace Township pursuant to his duty to promote peace and good order among the law-abiding citizens of East Brandywine and Wallace Townships. As Chalfont Road approaches Marsh Creek Lake, one passes from Wallace Township into a small parking lot in Upper Uwchlan Township. Officer Alexander was not sworn to uphold the law in Upper Uwchlan Township. Nevertheless, it was the custom of Wallace Township Officers to proceed into the small parking lot for the purpose of turning around and proceeding back out Chalfont Road.

While making this maneuver, Officer Alexander espied the Ford Escort. He was aware that Marsh Creek State Park was closed to visitors after dark, except for fishermen, and in keeping with what was apparently a long standing practice on his part, he decided to go up to the Ford Escort and see whether the occupants were fishing or not, and if not, to ask them courteously to leave.

As he approached the Escort, the driver's side window was rolled down, the driver threw something from the car, and the window was rolled up again. Officer Alexander went to the driver's side, and the window was rolled down again. Officer Alexander was immediately smitten with the overwhelming and distinctive odor of marijuana.

. . . . .

At some point, for his own safety, Officer Alexander asked the occupants to step from the car and keep their hands out of their pockets where he could see them. The occupants complied. Officer Alexander then went to his car and called in back-up both from his own township and from Upper Uwchlan Township. When the Upper Uwchlan Officers arrived, they placed the occupants of the Ford Escort

under formal arrest. Patrick Eisenfelder was one of these occupants.

(Slip Op., Wood, J., 1/18/95, pp. 1–3.)

On appeal to this Court, appellant argues his motion to suppress should have been granted as the police officer did not have authority to enforce a summary violation of park rules outside of his primary jurisdiction. The detention, therefore, was illegal, and the evidence seized should have been suppressed.

The relevant statute at issue is set forth, in pertinent part, as follows:

(a) **General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

. . . . .

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S. § 8953(a)(5).

 This Act is not among those statutes which must be strictly construed under the rules of statutory construction, but instead is subject to liberal construction to effectuate its objectives and to promote justice. *Commonwealth v. McHugh,* 413 Pa.Super. 572, 605 A.2d 1265 (1992). Specifically, one of the principle objectives to be obtained by this Act is to promote public safety while maintaining jurisdictional police lines. *Commonwealth v. Merchant,* 528 Pa. 161, 595 A.2d 1135 (1991). However, as our Supreme Court stated in *Mer-*

*chant,* "the General Assembly recognized that constructing impenetrable jurisdictional walls benefitted only the criminals hidden in their shadows." *Id.* at 169, 595 A.2d at 1139.

■ We find the actions of the police officer in stopping and detaining appellant were authorized under section (a)(5) of the Act. In accordance with the Act, the officer was on "official business," had probable cause that an offense had been committed and made a reasonable effort to identify himself as a police officer. In addition, the officer did not arrest appellant but merely detained him until the neighboring township police arrived. Appellant claims, however, the reason for the officer's stop (a possible violation of state park regulations, which is a summary offense), is not an "offense which is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property." *Id.*

While the facts reveal the officer originally stopped to investigate a potential violation of park regulations (a summary offense), he, in fact, detained appellant as the result of personally viewing him committing a misdemeanor, which clearly is within the parameters of the Act. The officer testified it is customary for the department to check parked cars after the park is closed (N.T., 1/12/95, p. 8). As he approached the car, he saw an object tossed out the window and as the driver rolled the window down, "smoke actually came from within the car [that smelled] like marijuana." *Id.* at 9. This testimony provides sufficient evidence that the officer had probable cause to believe a misdemeanor had been committed, regardless of the purpose of his initial stop.

■ Moreover, were we to rule in appellant's favor, our decision would greatly inhibit the future efforts of our Commonwealth's law enforcement officials. As an illustration, our research reveals that North Park, which is located in Allegheny County, encompasses no less than three townships. For those officers, while on local patrol, to in effect ignore any park violations which occur across the non-delineated boundary lines because they are not of a predetermined magnitude or danger to other people leads to an absurd conclusion.

Taking our analysis further, Allegheny County has 130 municipalities and almost as many police departments. The boundaries of the municipalities, hilly terrain, rivers and the confoluted roads makes it virtually impossible to effectively patrol most municipalities without crossing municipal boundaries. Public interest requires flexibility in pursuing criminals and investigating suspicious activity within the view of properly empowered police officers. Criminal activity does not respect municipal borders and to require police to curtail their actions in the face of observed suspicious or actual criminal behavior is to impose an unreasonable burden on the police and endow the criminal with an incredible advantage. Logic and sound legal principles dictate that an officer, while enforcing a summary offense across a township line in a park, is also empowered to act upon additional violations which he may witness after making the investigatory stop. There is no limitation on the number of scenarios whereby a stop for a summary offense could result in the discovery of far more serious criminal activities such as assaults, robberies, rapes or homicides. The stop for a summary offense cannot result in the suppression of the more serious criminal activity thereafter discovered, and we will not find otherwise just because there was a minor incursion across a municipal boundary.

We must construe this Act liberally to effectuate its objectives and promote justice. *McHugh, supra,* at 413 Pa.Super. 572, 605 A.2d 1265. Any other interpretation of the Act, given the facts presented, would not be in keeping with the legislative intent of the Act as espoused by our Supreme Court in *Merchant.* This holding also conforms to the aims described by this Court in *Commonwealth v. Ebersole,* 342 Pa.Super. 151, 492 A.2d 436 (1985), which, inter alia, are to promote a cohesive working relationship among municipal police departments. *Id.* at 153–55, 492 A.2d at 438. Accordingly, we find the officer did not violate the Act in stopping and detaining appellant until the proper authorities arrived, and the trial court did not err in denying appellant's motion to suppress the evidence.

Judgment of sentence affirmed.

McEWEN, J., concurs in the result.