**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Michael Joseph MORRIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 21, 2003.
Filed July 16, 2003.

Frank Flick, Norristown, for appellant.

Mary M. Killinger, Asst. Dist. Atty., Norristown, for Com., appellee.

BEFORE: FORD ELLIOTT, BENDER, and OLSZEWSKI, JJ.

OPINION BY BENDER, J.:

¶1 Michael Joseph Morris (Appellant) appeals from the judgment of sentence entered following a conviction for driving under the influence. Appellant claims that the trial court erred in denying his motion to suppress because the police lacked au-

thority to stop him under the Statewide Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S. §§ 8951–8954. For the following reasons, we affirm.

¶2 The trial court made the following findings of fact:

1. On the evening of May 6, 2001, at approximately 8:00 PM, Mr. Kenneth McGinnis was driving from Pottsgrove to North Wales, through Montgomery County, Pennsylvania, when he observed a dark-colored Ford automobile in front of his vehicle being driven in an erratic manner, at significant variations in speed as the two cars proceeded along Ridge Pike, Limerick Township. As Mr. McGinnis continued to move eastbound, he kept the Ford in view as it both crossed the centerline of Ridge Pike and drove onto the shoulder of the roadway.

2. Mr. McGinnis called 911 on his cellular telephone and described the situation, as it was developing in front of him, to the operator/dispatcher, and remained on the telephone line as he continued to follow the erratically driven Ford, giving constant updates as to its position.

3. At or about 8:14 PM on May 6, 2001, Corporal Robert Ward of the Upper Providence Police Department was on duty, in uniform, and in a marked police vehicle.

4. Corporal Ward received a report over his police radio that a suspected intoxicated driver was driving a dark-colored Ford vehicle eastbound on Ridge Pike in Limerick Township, Montgomery County, Pennsylvania, and was headed toward Upper Providence Township.

5. Corporal Ward was located close to Royersford in Upper Providence Township, and began to proceed toward

Ridge Pike, taking his usual route to that section of Upper Providence Township, which involved traveling through Trappe Borough.

6. As Corporal Ward approached the Trappe/Upper Providence Township line, he observed a vehicle matching the description given over the radio, traveling eastbound on Ridge Pike in Trappe Borough.

7. The dark-colored Ford was the only vehicle matching the police radio broadcast description seen by Corporal Ward at or near the location where the subject vehicle was likely to be found.

8. After spotting the dark-colored Ford, Corporal Ward began to follow the car in Trappe Borough, and observed that it was repeatedly drifting to the right and then jerking to the left to straighten out its course.

9. Corporal Ward eventually observed the dark-colored Ford come to a full stop at a distance of several car lengths behind a vehicle that had already come to a stop at the traffic light at the intersection of Ridge Pike/Main Street and Route 113.

10. The Corporal maneuvered his police car past two vehicles, including one being driven by Mr. McGinnis, and pulled in behind the stopped dark-colored Ford.

11. After the vehicles stopped on Ridge Pike at the intersection with Route 113, the dark-colored Ford made a turn into a Getty gas station located on the corner of that intersection in Trappe Borough, and came to a stop in front of the bay doors of the garage. Corporal Ward followed the vehicle into the parking lot of the gas station, at which point he made radio contact necessary to inform the Pennsylvania State Police of the situation which was occurring within the

Borough of Trappe, an area without its own municipal police force.

12. The Corporal then exited his vehicle and approached the dark-colored Ford LTD and asked its driver, the Defendant, Michael J. Morris, for his license and his vehicle's registration card. During this exchange, the Corporal detected a strong odor of alcohol coming from Mr. Morris, and observed that he appeared disoriented, had glassy, blood shot eyes and slurred speech, and had difficulty finding the documents that he was asked to produce.

13. When the Corporal told Mr. Morris that he detected the odor of alcohol on or about his person, the Defendant admitted to having consumed two beers and two double vodkas.

14. At this point, Pennsylvania State Trooper James Curto arrived on the scene, and Corporal Ward handed him the Defendant's driver's license and allowed the Trooper to continue the investigation.

15. The Commonwealth intends to introduce evidence derived from this encounter at trial.

16. The Defendant seeks to suppress all evidence derived from this encounter, on the theory that Corporal Ward's actions violated Pennsylvania's Statewide Municipal Police Jurisdiction Act, 42 Pa. C.S.A. § 8953 (hereinafter "MPJA"), and that, as a result of that violation, the information secured from the encounter between the Corporal and the Defendant must be suppressed.

Trial Court Opinion (T.C.O.), 3/13/02, at 1–4. The trial court denied Appellant's motion to suppress, and following a bench trial, the Honorable Kent H. Albright found Appellant guilty. Appellant then filed the instant appeal raising one question for our review:

Did the trial court err when it ruled that Corporal Ward of the Upper Providence Township Police Department was authorized by Section (a)(5) of the Statewide Municipal Police Jurisdiction Act, 42 Pa.C.S.A [§ ] 8953, to seize and detain Appellant in the Borough of Trappe which is outside Corporal Ward's jurisdiction?

Brief for Appellant at 5.

¶ 3 In *Commonwealth v. Ayala*, 791 A.2d 1202 (Pa.Super.2002), we set forth our standard for reviewing the ruling of a suppression court:

> In an appeal from the denial of a motion to suppress, our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. As a reviewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied.

*Id.* at 1207.

¶ 4 In the instant case, the trial court concluded that Corporal Ward possessed the authority to stop Appellant under Section 8953 of the MPJA, which in pertinent part states:

> (a) **General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth **or otherwise perform the functions of that office** as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
>
> . . .
>
> (5) Where the officer is on **official business and views an offense, or has probable cause to believe that an offense has been committed,** and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S. § 8953(a)(5) (emphasis added). Therefore, in order for this subsection to bestow authority upon an officer to "enforce the laws of this Commonwealth or otherwise perform the functions of that office" while outside of his or her jurisdiction, at the outset the officer must: (1) be on official business; and (2) either view an offense or have probable cause to believe that an offense has been committed.

¶ 5 The trial court concluded that Corporal Ward was on "official business" when he was driving through Trappe Borough, on his way to his jurisdiction in Upper Providence Township, in response to a radio report of a suspected drunk driver. T.C.O., 9/23/02, at 6. Although the trial court's Finding of Fact No. 8 states that "Corporal Ward began to follow [Appellant's] car," all parties agree that this occurred only after Corporal Ward, who was traveling westbound on Ridge Pike in Trappe Borough, turned his car around in order to follow Appellant, who was traveling eastbound. Thus, the court concluded that Corporal Ward had probable cause to believe that an offense had been committed *after* he turned his police car around,

and observed Appellant's vehicle swerve across the road's center line multiple times. *Id.* at 7.

¶ 6 The court denied Appellant's motion to suppress on the basis that under the MPJA, Corporal Ward had the authority to stop Appellant in these factual circumstances. It is not disputed that Appellant was seized at the moment that Corporal Ward approached Appellant and requested his driver's license. Moreover, it is clear to us that no reasonable person in Appellant's situation would have believed that he or she was free to decline Corporal Ward's request and leave. Consequently, Appellant was seized at that moment. *See Commonwealth v. McClease,* 750 A.2d 320, 324 (Pa.Super.2000).

¶ 7 On appeal, Appellant does not challenge the court's conclusion that Corporal Ward was on "official business" when he was passing through Trappe Borough on his way to Upper Providence Township, nor that he possessed probable cause that an offense had been committed after he began following Appellant. Instead, Appellant argues that Corporal Ward lacked probable cause when he turned his police car around to follow Appellant while in Trappe Borough. Consequently, Appellant argues that at that moment, Corporal Ward embarked upon an investigation outside of his jurisdiction, and that he had no authority to do so under the MPJA.

¶ 8 For purposes of clarity, it is important to note that had Corporal Ward possessed probable cause to believe that an offense had been committed as he was travelling westbound on Ridge Pike through Trappe Borough, then he clearly would have been authorized under the MPJA to turn his car around to follow or stop Appellant. However, as the facts indicate, at the time that he turned his car around, the only information he had was

that which was relayed to him by the radio dispatch, i.e., that the driver was suspected of drunk driving. Such information alone is insufficient to establish probable cause, and the Commonwealth does not attempt to argue that it does. Instead, both the Commonwealth and the trial court rely upon Corporal Ward's observations of Appellant's vehicle *after* Corporal Ward turned his car around in order to establish that probable cause existed.

¶ 9 Thus, the issue before us requires a determination as to when Corporal Ward was required to have probable cause. Establishing this temporal point is contingent upon evaluating the scope of Corporal Ward's "official business" as he traveled through Trappe Borough. If Corporal Ward's "official business" in Trappe continued through the time that he turned his vehicle around and observed Appellant driving erratically, then Corporal Ward's actions were authorized under the MPJA because by the time he stopped Appellant, Corporal Ward had probable cause to believe that an offense had been committed. If, however, the scope of Corporal Ward's "official business" did not extend in time past the point that he turned his vehicle around, then it is of no avail to the Commonwealth that he subsequently possessed probable cause, and Corporal Ward's following of Appellant, based upon his suspicion that Appellant was driving under the influence, was unauthorized by the MPJA.

¶ 10 There are two fairly recent Pennsylvania Supreme Court decisions that discuss the applicability of subsection 8953(a)(5). We begin with *Commonwealth v. Merchant,* 528 Pa. 161, 595 A.2d 1135 (1991), in which the court held that the police officers who were outside their primary jurisdiction were nonetheless on "official business" because "they were on duty traveling their usual route as part of their routine responsibilities." *Id.* at 1139. The

court further concluded that because the defendant "drove his car in an erratic manner almost hitting an oncoming car, probable cause was established that an offense had been committed which offense [was] a felony, misdemeanor, breach of the peace or other act which present[ed] an immediate clear and present danger to persons or property." *Id.* (alteration in original) (quotation marks omitted). Based in part upon the foregoing, the court held that the officer's stop and detention of the defendant was authorized under the MPJA. *See id.*

¶ 11 In so holding, the court discussed the legislative intent of the MPJA and the manner in which courts should construe it:

> [O]ne of the principle objects to be attained by this Act was the promotion of public safety while maintaining jurisdictional police lines.
>
> . . .
>
> [T]he statute should be liberally construed to effectuate its purposes, one of which is to provide police officers with authority to make arrests outside of their primary jurisdictions in limited situations.
>
> . . .
>
> Moreover, it is noteworthy that the predecessor Act made provision for police action outside primary jurisdiction in only one circumstance, i.e., hot pursuit. The inclusion of additional instances of authorization indicates that the General Assembly intended to expand the powers of local police to protect the public, where such expansion would not adversely affect the ultimate goal of maintaining police accountability to local authority. Apparently, the General Assembly recognized that constructing impenetrable jurisdictional walls benefited only the criminals hidden in their shadows.

*Id.* at 1138–39 (quotation marks and footnote omitted).

¶ 12 One year later, in *Commonwealth v. Pratti*, 530 Pa. 256, 608 A.2d 488 (1992), a case that also interpreted the applicability of subsection 8953(a)(5) "in keeping with the legislative intent of the Act as espoused in [its] opinion in *Merchant*," the court again held that the police officer's stop of the defendant was authorized under the MPJA. The facts of *Pratti* were as follows.

¶ 13 Officer Frank Albert of the Millvale Borough Police Department was on patrol duty at the end of Millvale that borders Shaler Township. He was in uniform and driving a marked police car. At an intersection that demarcates the border between Millvale and Shaler, there is a gas station within the boundaries of Shaler Township that Officer Albert would routinely turn into as he circled back to Millvale. In the early morning hours of August 3, 1998, Officer Albert had just turned into the gas station when he "heard a loud noise which he described as a 'loud clang or bang' that sounded like an accident." *Id.* at 489. The court described what occurred afterward as follows:

> Upon hearing the noise, Officer Albert abandoned his initial intentions **and proceeded to investigate what he believed might have been an accident.** In so doing, he proceeded along Babcock Boulevard for a short distance and then turned left onto Geyer Road at which time he observed a vehicle ahead of him and noticed a stop sign lying on the road. He then radioed the Shaler Police Department and informed them of what he had observed and that he was going to assist them by stopping the vehicle.
>
> As Officer Albert approached the vehicle, he observed it swerving along the roadway, back and forth across the centerline. He proceeded to stop the vehi-

cle just as it left Shaler Township and entered Reserve Township. When he approached the vehicle, Officer Albert observed that the driver, appellee, was exhibiting signs of intoxication. Officer Albert detained appellee and was subsequently joined at the scene by fellow officers from both Shaler and Reserve Townships.

*Id.* (emphasis added).

¶ 14 Prior to trial, the defendant filed a motion to dismiss the charges on the basis that Officer Albert acted outside his jurisdictional limits and that the arrest was unauthorized under the MPJA. The court denied the motion. However, following guilty verdicts for driving under the influence of alcohol and driving while operating privilege is suspended or revoked, the defendant filed a post-verdict motion in arrest of judgment, which the court granted. The court determined that Officer Albert was not on "official business" at the time that he arrested the defendant, and therefore, his actions were unauthorized by the MPJA. On appeal to this Court, we affirmed, agreeing that Officer Albert was not on "official business" when he left his jurisdiction of Millvale and entered the gas station in Shaler. *See Commonwealth v. Pratti,* 400 Pa.Super. 622, 576 A.2d 1137 (1990) (unpublished memorandum), *reversed,* 530 Pa. 256, 608 A.2d 488 (1992).

¶ 15 Our Supreme Court reversed. The court relied on its decision in *Merchant,* and concluded that Officer Albert "was on 'official business' as he traveled toward his routine turnaround in Shaler Township." *Pratti,* 608 A.2d at 490. More pertinent to the issue before us in this case is how the court interpreted the scope of Officer Albert's "official business" in Shaler Township.

When he heard what he believed to be an automobile accident, **he had an affirmative duty to proceed and investigate** in order to make himself available to render assistance if need be. The fact that the occurrence was outside of his jurisdiction does not vitiate his duty to assist if needed; **nor does it alter the fact that he continued to be on "official business."**

. . .

Having determined that Officer Albert was on "official business" at the time he was outside of his jurisdiction, we have no hesitancy in then concluding that, upon hearing what he believed may have been an automobile accident, and within seconds thereof, seeing a stop sign lying in the road and a vehicle ahead of him, **which upon further investigation, was noticeably swerving across the centerline, he possessed the requisite probable cause pursuant to subsection (5) of the Act to enforce the laws of this Commonwealth outside of his primary jurisdiction.**

*Id.* (emphasis added). Thus, the court determined that the scope of Officer Albert's "official business" continued through his investigation of the suspected traffic accident, and that because the result of this investigation established probable cause that the defendant had committed an offense, the MPJA authorized Officer Albert to "enforce the laws of this Commonwealth outside of his primary jurisdiction." *Id.*

¶ 16 Applying the foregoing jurisprudence to the facts of this case, we conclude that the scope of Corporal Ward's official business in Trappe Borough extended through the time that he turned his vehicle around to follow Appellant in order to investigate whether he was indeed driving under the influence. Whereas in *Pratti,* the court delimited a broad scope for Officer Albert's "official business" in Shaler Township, as the purpose of his initial presence in Shaler was wholly unrelated to his subsequent investigation of the defen-

dant, we need not test that limit in this case. Corporal Ward's "official business" in proceeding through Trappe Borough on his way to his primary jurisdiction in Upper Providence was his response to a radio dispatch call of a suspected drunk driver in the most expeditious manner possible. In this regard, the trial court found that Corporal Ward "began to proceed toward Ridge Pike, taking his usual route to that section of Upper Providence Township, which involved traveling through Trappe Borough." T.C.O., 3/13/02, at 2. While performing this "official business" outside of his primary jurisdiction he observed the suspected vehicle, at which time it was incumbent upon him to further investigate. Similar to Officer Albert's investigation in *Pratti,* after Corporal Ward turned to follow Appellant, he observed his vehicle driving erratically. This observation, coupled with the information that he received from the radio dispatch, established probable cause. Consequently, under the MPJA, Corporal Ward was authorized to stop Appellant.

¶ 17 Finally, we conclude by noting that Corporal Ward's actions in this case comport with the legislative intent of the MPJA, and the further requirements of subsection 8953(a)(5), namely that he made "a reasonable effort to identify himself as a police officer." 42 Pa.C.S. § 8953(a)(5). Before Corporal Ward even approached Appellant, he made a radio call to inform the Pennsylvania State Police about what was occurring. Officer Ward, who was in uniform and traveling in a marked police car, then exited his vehicle, approached Appellant and requested his license and registration card. After a brief exchange during which Corporal Ward asked Appellant if he had been drinking, State Trooper James Curto arrived on the scene. At that point, Corporal Ward handed Appellant's documents over to Trooper Curto,

who then took over the investigation. Upon these facts, we do not hesitate to hold that Corporal Ward acted with the authority bestowed upon him by the MPJA, and therefore, the trial court correctly denied Appellant's motion to suppress.

¶ 18 Judgment of sentence **AF-FIRMED.**