[J-71-2018] [MO: Donohue, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 56 WAP 2017 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered May 23, 2017 at No. |
| | : | 951 WDA 2015, affirming the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Allegheny County |
| | : | entered May 21, 2015 at No. CP-02- |
| MOLLY HLUBIN, | : | CR-0003205-2014. |
| | : | |
| Appellant | : | ARGUED: October 23, 2018 |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                                       **DECIDED: MAY 31, 2019**

This case presents the question of whether a police officer is authorized to assist during a DUI checkpoint in a neighboring jurisdiction without the officer's municipality entering into an agreement in accordance with the Intergovernmental Cooperation Act (ICA).[1]

I reiterate certain undisputed facts that inform my conclusion. Sergeant Douglas Ogden of the Moon Township Police Department is the program coordinator and project manager for the Western Pennsylvania DUI task force. N.T., 3/13/15, at 9. In this role, his responsibilities include, inter alia, gathering statistics regarding the incidence and locations of DUI accidents and offenses, as well as applying for grants, training other officers on DUI detection, and running checkpoints himself. *Id.* at 9-10. Sergeant Ogden identified Steubenville Pike in Robinson Township as an ongoing problem area with

---

[1] 53 Pa.C.S. §§2301-2317.

regard to DUI occurrences. *See id.* at 11-14 (citing statistics from 2008-2012 of DUI offenses on Steubenville Pike). This information was shared with Sergeant Joel Hamilton of the Robinson Township Police Department, who was the officer in charge of the checkpoint at issue herein. Sergeant Hamilton assisted in choosing the location on Steubenville Pike, Robinson Township, "based on his local knowledge of the statistics" provided by Sergeant Ogden. *Id.* at 15. On the night of the checkpoint, a nearby venue held a concert. Sergeant Ogden testified that when a concert is held there, the area is "inundated with traffic and with DUI problems and alcohol problems." *Id.* at 16.

Prior to the checkpoint occurring, Sergeant Ogden sent Sergeant Hamilton a Sobriety Checkpoint Authorization form. The form specifically identified Sergeant Hamilton as the officer in charge, and was signed by Robinson Township Police Chief Dale Vietmeier. *Id.* at 17-20. While the checkpoint was operating, Sergeant Ogden came into contact with Appellant. At the time, he was "filling in on the road" because the "line had become depleted of manpower[.]" *Id.* at 30. Once Sergeant Ogden detected indicia of alcohol consumption, he escorted Appellant to Officer Dominic Sicilia of the Robinson Township Police Department who conducted the field sobriety testing and arrested Appellant. *Id.* at 31-33, 61-67.

Appellant posits that absent compliance with the ICA, the police were without legal authority to conduct the sobriety checkpoint, and the traffic stop was therefore unlawful. Appellant's Brief at 26. The majority likewise concludes that the checkpoint in the instant case required compliance with the ICA, and the exceptions permitting extra jurisdictional police activity under the Municipal Police Jurisdiction Act (MPJA)[2] do not apply under the circumstances. *See* Majority Opinion at 2, 24. I disagree. It is undisputed that technical

---

[2] 42 Pa.C.S. §§ 8951-8954.

compliance with the ICA was not met.[3] Notwithstanding this noncompliance, the facts of this case comport with the requirements of the MPJA, which we must liberally construe in order to effectuate its purpose. *See Commonwealth v. Peters*, 965 A.2d 222, 274-75 (Pa. 2009). Because Sergeant Ogden was acting under statutory authority to enforce the laws of this Commonwealth, I dissent.

First, I note my agreement with the unanimous en banc Superior Court's reasoning that the ICA and MPJA "are not mutually exclusive" and may be applied concurrently. *Commonwealth v. Hlubin*, 165 A.3d 1, 6 (Pa. Super. 2017) (en banc). The ICA addresses cooperative agreements between two or more local Commonwealth governments or similar entities in other states while the MPJA is addressed to the actions of "any duly employed municipal police officer." *Compare* 53 Pa.C.S. § 2303, *with* 42 Pa.C.S. § 8953(a).

The MPJA confers upon "[a]ny duly employed municipal police officer . . . the power and authority to enforce the laws of this Commonwealth" when outside of the territorial limits of his or her primary jurisdiction under six statutorily authorized circumstances. 42 Pa.C.S. § 8953(a). One such circumstance is "[w]here the police officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance." 42 Pa.C.S. § 8953(a)(3).

The majority concludes that Section 8953(a)(3) requires that a police officer's request for aid must be contemporaneous with his or her assessment that there is probable cause of criminal activity. *See* Majority Opinion at 21-23. I disagree. As noted,

---

[3] *See* Commonwealth's Brief at 17-18 (Commonwealth acknowledging that intergovernmental cooperation agreements are authorized by a municipality's adoption of an ordinance and failure to do so renders an intergovernmental agreement void, and conceding evidence of an ordinance was lacking in the instant case); *accord* 53 Pa.C.S. § 2305; *id.* § 2315.

Section 8953(a)(3) permits an officer to act outside of his or her jurisdiction where the officer "has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer **or** otherwise has probable cause to believe that the other officer is in need of aid or assistance." 42 Pa.C.S. § 8953(a)(3) (emphasis added). The majority posits that the two circumstances outlined in Section 8953(a)(3) "are related to each other in that each imputes the element of probable cause." Majority Opinion at 21. It finds this construction compelled by the General Assembly's inclusion of the word "otherwise" in the second clause, such that an officer's request for aid must be in regard to "addressing specific ongoing criminal activity." *Id.*

A plain reading of Section 8953(a)(3) belies this forced construction. *See Koken v. Reliance Ins. Co.*, 893 A.2d 70, 81 (Pa. 2006) ("Generally, the best indication of legislative intent is the plain language of the statute." (citations omitted)). The word "or" separates two scenarios authorized under this subsection. One circumstance is when an officer "has been requested to aid or assist[;]" the second is when an officer "otherwise has probable cause to believe that the other officer is in need of aid or assistance." 42 Pa.C.S. § 8953(a)(3). The majority focuses on the probable cause language to read in a requirement that, in either scenario under Section 8953(a)(3), the officer must be "addressing a specific criminal episode." Majority Opinion at 21; *see Commonwealth v. Vasquez*, 753 A.2d 807, 809 (Pa. 2000) ("We are bound by the unambiguous language of the statute and cannot read language into it that simply does not appear. 1 Pa.C.S. § 1921(b)"). I recognize that generally the familiar probable cause standard "connotes ongoing criminal activity" and applies to an officer's level of suspicion to believe an offense is being committed. *See* Majority Opinion at 22. However, the legislature here used the term probable cause in the context of an officer's "probable cause to believe that the officer is in need of aid or assistance[,]" not probable cause to believe an offense has

been or is being committed. 42 Pa.C.S. § 8953(a)(3). The focus is on whether the officer outside of the primary jurisdiction believes that another officer is in need of aid, regardless of whether or not a crime is currently in progress. The use of the phrase "or otherwise" merely signals a contrast between the first circumstance where an officer has been specifically asked to assist in another jurisdiction and has direct knowledge of the request for aid, and the second where he or she has not been expressly requested but otherwise has reason to suspect that an officer in another jurisdiction is in need of aid.[4] Had the legislature intended probable cause of criminal activity to be a requirement under both circumstances addressed in Section 8953(a)(3) it easily could have said so.[5]

The majority justifies its deviation from the plain text by highlighting that its construction is consistent with the underlying purpose of the statute. Again, I disagree. One of the principal aims of the MPJA is "to promote public safety while maintaining police accountability to local authority; it is not intended to erect impenetrable jurisdictional walls benefitting only criminals hidden in their shadows." *Commonwealth v. Lehman*, 870 A.2d 818, 820 (Pa. 2005) (citation, quotation marks, and brackets omitted). Another legislative goal of the MPJA is "to promote a cohesive working relationship among municipal police departments." *Commonwealth v. Ebersole*, 492 A.2d 436, 437-38 (Pa. Super. 1985). Its predecessor, however, authorized police activity outside an officer's primary jurisdiction only if the officer was engaged in hot pursuit. *See Commonwealth v. Merchant*, 595 A.2d 1135, 1138-39 (Pa. 1999). Analyzing the significance of the legislative broadening of the scope of a police officer's extra-jurisdictional actions we reasoned, "[t]he inclusion of

---

[4] The phrase "or otherwise" is "used to refer to something that is different from something already mentioned." https://www.merriam-webster.com/dictionary/or%20otherwise

[5] *See, e.g.* 42 Pa.C.S. § 8953(a)(5) including in the exceptions to extra-jurisdictional police activity, where an officer "has probable cause to believe an offense has been committed[.]"

additional instances of authorization indicates that the General Assembly intended to expand the powers of local police to protect the public, where such expansion would not adversely affect the ultimate goal of maintaining police accountability to local authority." *Id.* at 1139.

Additionally, the MPJA "is not among those statutes which must be strictly construed under the rules of statutory construction, but instead is subject to liberal construction to effectuate its objectives and to promote justice." *Commonwealth v. Eisenfelder*, 664 A.2d 151, 153 (Pa. Super. 1995). This Court has observed that the focus on police accountability to the primary jurisdiction, "fosters local control over police, and discourages extra-territorial forays by outside law enforcement officers who are not subject to the control of the municipality[.]" *Merchant*, 595 A.2d at 1138 n.7.

At the outset of its statutory construction analysis, the majority recognizes that the General Assembly's intent may be gleaned by considering "[t]he object to be attained[,] the former law, if any, including other statutes upon the same or similar subjects[, and] the consequences of a particular interpretation." Majority Opinion at 10 (quoting 1 Pa.C.S. § 921 (numbering omitted)).

Applying these principles to Section 8953(a)(3) of the MPJA, Sergeant Ogden's actions were authorized. The object to be attained by the MPJA is to promote public safety while maintaining accountability; its predecessor included a single exception to police acting outside of a primary jurisdiction, but was considerably broadened; and the consequences of a narrow interpretation may benefit criminals hiding in the shadows of impenetrable jurisdictional walls. *See Lehman*, 870 A.2d at 820 (Pa. 2005). The legislative intent is frustrated by the majority's decision.

In this case, Sergeant Ogden's aid and presence were requested as evidenced by the authorization form signed by the Robinson Township Police Chief Vietmeier. Further,

Sergeant Ogden was working in tandem with local authority. This is not a case where his presence outside his jurisdiction in any way usurped the authority of the local police officers to do their job to protect their jurisdiction or rendered him unaccountable. Indeed, the officers who were in charge of the checkpoint and who performed the field sobriety test and arrested Appellant were members of the Robinson Township police force. Sergeant Ogden's presence was in response to the Robinson Township's need for more manpower to ensure the safety of its citizens on a roadway with a history of DUI offenses particularly when concerts take place, as was the case here. *See* N.T., 3/13/15, at 11-14, 16, 30. Sergeant Ogden's participation and assistance, therefore, were justified under the letter and spirit of the MPJA's objectives to promote public safety, maintain police accountability, and foster cohesive work relations among officers of different police departments. This construction of the MPJA in this case is consistent with a plain reading of the Act, promotes the public good, and does not benefit criminals hidden in the shadows of "impenetrable jurisdictional walls." *See Lehman*, 870 A.2d at 820. Further, this Court has hinted that the list of specific scenarios that permit extra jurisdictional policing is not strictly exhaustive. *See Commonwealth v. O'Shea*, 567 A.2d 1023, 1029 (Pa. 1989) ("We do not believe that these six specific circumstances are all-encompassing of any activity that an officer may conduct outside of his primary jurisdiction, no matter how informal or unobtrusive.").

Under the majority's approach, an officer responding to an earnest request for aid in an emergency situation without an element of criminality, would not be permitted to act outside of his or her primary jurisdiction to aid the requesting officer under the MPJA. *See* Majority Opinion at 23. For example, if a sudden loss of power occurs in a jurisdiction, requiring police officers to step in to safely direct traffic, neighboring officers would not have authority under today's decision to lend assistance despite the clear necessity. This

would be an absurd result under the MPJA. *See Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 312 (Pa. 2018) ("Governing presumptions include that the General Assembly intended the entire statute at issue to be effective and certain, and that the General Assembly did not intend an absurd result. 1 Pa.C.S. § 1922(1)-(2)").

The majority also contends that "the Commonwealth's view requires an interpretation that policing is not a government function, but rather that decisions in this area are best left to police departments to make for themselves." Majority Opinion at 17. This sweeping proposition ignores that police are statutorily endowed with the power and authority to assist other police departments upon request or in other enumerated circumstances under the MPJA.

Although I am of the view that police action in this case was within the confines of the MPJA, I disagree that, had it not been so authorized, suppression is the appropriate remedy.[6] This Court outlined a three-part test for violations of the MPJA in *O'Shea*. Specifically, we approved of a case-by-case approach to assess whether suppression was warranted in light of all attendant circumstances "including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the Act, and the prejudice to the accused. *O'Shea*, 567 A.2d at 1029.

Here, Sergeant Ogden testified that the checkpoint stops usually involve a 30 to 45 second encounter between an officer and a motorist. N.T., 3/13/15, at 27; *see Commonwealth v. Blouse*, 611 A.2d 1177, 1179-80 (explaining that the intrusion upon a motorist by a DUI checkpoint is "minimal" where the checkpoint is substantially compliant with guidelines that ensure its constitutionality). Regarding the second factor, the chief

---

[6] Because the parties do not contest the vitality of the *O'Shea* test, I agree that we should reserve ruling on whether it is an appropriate means to evaluate the remedy for violations of the MPJA for a case where the parties brief and develop the issue for this Court's consideration. *See* Concurring and Dissenting Opinion, C.J. Saylor, at 1-2.

aims of the MPJA include encouraging cohesive relationships among police departments and promoting public safety. *See Ebersole*, 492 A.2d at 437-38; *Lehman*, 870 A.2d at 820. Any technical violation that occurred under the circumstances cannot be deemed a gross deviation from the letter and spirit of the Act, as those objectives were advanced by Sergeant Ogden's actions in this case.

Finally, I acknowledge that Appellant may not have been subject to a DUI checkpoint had it not been for Sergeant Ogden's presence. *See* Majority Opinion at 29. However, it cannot be said that she would not have been otherwise subject to a police detention after traveling on a busy highway while intoxicated. Further, the ultimate arrest in this matter was made by a Robinson Township police officer within the primary jurisdiction. Weighing application of the *O'Shea* factors to the circumstances herein leads me to conclude suppression is inappropriate. Moreover, I am of the view that this brief interaction between Sergeant Ogden and Appellant, which was in the interest of public safety and occurred while Sergeant Ogden was aiding the officers in the primary jurisdiction, "does not constitute the type of behavior that the legislature sought to prohibit through enactment of the MPJA[.]" *Commonwealth v. Chernosky*, 874 A.2d 123, 131 (Pa. Super. 2005) (en banc). The exclusion of evidence in this case clearly "would not advance any of the purposes the MPJA was designed to serve." *Lehman,* 870 A.2d at 821. For these reasons, I respectfully dissent.