J-A26027-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY DALE COGAR | : | |
| | : | |
| Appellant | : | No. 176 WDA 2019 |

Appeal from the Judgment of Sentence Entered January 2, 2019
In the Court of Common Pleas of Greene County Criminal Division at
No(s): CP-30-CR-0000301-2017

BEFORE: SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY LAZARUS, J.: FILED NOVEMBER 15, 2019

Rodney Dale Cogar appeals from the judgment of sentence, imposed in the Court of Common Pleas of Greene County, after the trial court convicted him of driving while operating privileges are suspended and other summary offenses. Cogar challenges the denial of his suppression motion, arguing the initial investigating officer lacked jurisdiction under the Municipal Police Jurisdiction Act.[1] Upon careful review, we affirm.

The following facts have been gleaned from the trial court's findings of fact placed on the record at the conclusion of the suppression hearing and from the record as a whole. Waynesburg Borough Police Officer Marcus Simms was on patrol on the afternoon of August 11, 2017. Waynesburg Borough ("Borough") is approximately one square mile in area and is surrounded by

_____

[1] 42 Pa.C.S.A. §§ 8951-8955.

Franklin Township ("Township"). The Borough has its own police force. The Township does not maintain a police force, and relies upon the Pennsylvania State Police for law enforcement. The Township is not within the jurisdiction of the Borough's police force.

While on patrol, Officer Simms received a 911 dispatch from the Greene County Emergency Management Center[2] instructing him to be on the lookout for a silver and red Chevrolet pickup truck being operated erratically on North Porter Street. A portion of North Porter Street is located within the Borough. Officer Simms responded to the call and, ultimately, observed a truck fitting the description of the 911 dispatch parked on a "wide turnaround pulloff area" on Woodland Avenue, located entirely in Franklin Township. N.T. Suppression Hearing (Findings of Fact), 4/9/18, at 58. Officer Simms then turned his vehicle around to return to the area where the pickup was parked, at which time the driver of the pickup drove away in the opposite direction from Officer Simms' vehicle. Officer Simms again reversed course and followed the pickup truck to Washington Greene Health Systems Hospital ("Hospital"). While following the truck, Officer Simms observed driving conduct that "would be sufficient probable cause or reasonable suspicion to initiate a traffic stop" if Officer Sims were within his primary jurisdiction. Id. at 59. All of this conduct occurred within the Township.

_____

[2] The Greene County Emergency Management Center dispatches the Borough's police force, but does not perform that function for the Pennsylvania State Police.

When Officer Simms arrived at the Hospital parking lot, he detained Cogar pending the arrival of the state police. Pennsylvania State Trooper Lucas Borkowski, who had subsequently received radio notice that the erratic driver had been detained at the Hospital by Officer Simms, arrived one to two minutes thereafter. Trooper Borkowski "immediately noticed that [Cogar's] eyes were very glassy and bloodshot" and "detected a strong odor of alcoholic beverage emanating from his person." Id. at 33. When Trooper Borkowski asked Cogar if he had been drinking, Cogar stated that he had been "drinking all day and just wanted to go see his father who was admitted into the hospital." Id.

Trooper Borkowski arrested Cogar and charged him with driving under the influence, disregarding a traffic lane, failing to stop at a stop sign and yield right of way, careless driving, driving while operating privileges are revoked, and reckless driving. A jury found Cogar not guilty of the charge of driving under the influence. The trial court convicted Cogar of the following summary offenses: one count of driving while operating privileges are suspended[3] and three counts of disregarding a traffic lane.[4] On January 2, 2019, the court sentenced Cogar to a term of 70 days' county intermediate punishment, to be served on electronic home monitoring. Cogan filed a timely notice of appeal to this court, followed by a court-ordered concise statement of errors

_____

[3] 75 Pa.C.S.A. § 1543(b)(1).

[4] 75 Pa.C.S.A. § 3309(1).

- 3 -

complained of on appeal pursuant to Pa.R.A.P. 1925(b). He raises the following claim on appeal:

> Where a borough police officer is on official business, patrols the entire length of the street within his jurisdiction to no avail in response to an anonymous, unverified report of an erratic driver in a two-tone truck, and then intentionally expands his reach by conducting an investigation outside his jurisdiction[] and then observes some cause to stops [sic], should the evidence obtained as a result be suppressed or precluded at trial?

Brief of Appellant, at 7.

> Initially, we set forth our standard of review:

> When considering the denial of a suppression motion, this Court's review is limited to determining whether the court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed in the suppression court, we consider only the Commonwealth's evidence and so much of the appellant's evidence as is uncontradicted when read in the context of the record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn from them are erroneous.

Commonwealth v. West, 937 A.2d 516, 527 (Pa. Super. 2007) (internal citations omitted).

Here, Cogar asserts that the trial court erred in failing to suppress all evidence obtained as a result of Officer Simms' extraterritorial foray into Franklin Township. This claim requires us to interpret the Municipal Police Jurisdiction Act ("MPJA"),[5] which provides police with the authority to act as police officers outside their jurisdiction in limited circumstances.

_____

[5] 42 Pa.C.S.A. §§ 8951–8954.

Commonwealth v. Bergamasco, 197 A.3d 805, 809 (Pa. Super. 2018). The MPJA is intended to "promote public safety while maintaining police accountability to local authority; it is not intended to erect 'impenetrable jurisdictional walls benefit[ing] only criminals hidden in their shadows.'" Commonwealth v. Lehman, 870 A.2d 818, 820 (Pa. 2005), quoting Commonwealth v. Merchant, 595 A.2d 1135, 1139 (Pa. 1991). The MPJA is to be construed liberally to give effect to its purposes. Lehman, 870 A.2d at 820.

Section 8952 of the MPJA provides that a municipal police officer may perform the functions of his or her office anywhere within his or her primary jurisdiction.[6] Section 8953(a) extends the authority of police officers to exercise official police duties outside of their primary jurisdictions in six specific and limited circumstances. Relevant here, extraterritorial action by police officers is authorized:

> (3) Where the officer:
>
> > (i) has been requested to aid or assist a Federal, State or local law enforcement officer or park police officer;

42 Pa.C.S.A. § 8953(a)(3).[7]

---

[6] An officer's "primary jurisdiction" is defined, in relevant part, as "[t]he geographical area within the territorial limits of a municipality or any lawful combination of municipalities which employs a municipal police officer[.]" 42 Pa.C.S.A. § 8951.

[7] Section 8953(a)(3) was recently amended in response to the decision of our Supreme Court in Commonwealth v. Hlubin, 208 A.3d 1032 (Pa. 2019).

Thus, the question in this matter is whether Officer Simms, acting in response to a 911 dispatch, based upon an anonymous tip, from the Greene County Emergency Management Center seeking assistance in locating an erratic driver on a street located partially in his primary jurisdiction, violated the MPJA by foraying into another jurisdiction in search of the vehicle in question. We conclude that he did not.

This Court addressed a similar scenario in Commonwealth v. Lloyd, 701 A.2d 588 (Pa. Super. 1997). There,

> while on routine patrol in his primary jurisdiction, [Ellwood City Police] Officer [Jon M.] Bobin received a dispatch from the Ellwood City Police Department requesting him to respond to appellant's accident in Ellport[, which was outside his primary jurisdiction]. Pursuant to the dispatch, the officer responded to the scene. . . . The Ellwood City Police Department was responsible for dispatching officers to Ellport.

Commonwealth v. Lloyd, 701 A.2d 588, 590–91 (Pa. Super. 1997). Upon arriving at the scene in Ellport, Officer Bobin observed appellant standing outside of his vehicle and noticed that his eyes were glassy and that he smelled of alcohol. Officer Bobin administered field sobriety tests, all of which appellant failed. Appellant was subsequently taken to the Ellwood City Hospital where blood was drawn. The blood test revealed that appellant's blood alcohol content was .193%. Appellant was later arrested and charged with DUI. The trial court denied his motion to suppress the evidence obtained as a result of his arrest by Officer Bobin, and appellant was convicted of DUI.

---

See 2019, July 2, P.L. 375, No. 58, § 1.1, imd. effective. The amendment applies retroactively to law enforcement conduct on or after June 15, 1982.

On appeal, this Court concluded that, under the circumstances presented, "we have no difficulty concluding that the police department's dispatch qualified as a request for aid or assistance" as contemplated by section 8953. Id. at 591. We reasoned that

> [a] holding to the contrary would lead to an absurd result. It would be ludicrous to require Officer Bobin to ignore the dispatch merely because it directed him to act outside his primary jurisdiction. Such a result would not foster municipal control over the police or promote public safety. Rather, such a result would only inure to the benefit of criminals committing crimes in Ellport.

Id.

Similarly, in this case, the safety of the public would be ill-served by requiring Officer Simms to ignore a dispatch regarding a hazardous driver on a road straddling two jurisdictions simply because a response might result in activity outside his primary jurisdiction. The salutary goal of protecting innocent drivers and pedestrians from the dangers of intoxicated or otherwise impaired motorists outweighs whatever minimal impact Officer Simms' actions may have had on Franklin Township's ability to maintain accountability over law enforcement officers within its jurisdiction. Notably, Officer Simms neither arrested Cogar nor filed a complaint against him. Rather, Officer Simms responded to the dispatch, located the vehicle in question, and simply detained its operator for one to two minutes pending the arrival of an officer with primary jurisdiction. Under these circumstances, we conclude that Officer Simms' actions fell within the exception contained in section 8953(a)(3) of the

MPJA. Accordingly, the trial court did not err in refusing to grant Cogar's motion to suppress.[8]

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2019

_____

[8] The fact that the tip precipitating the 911 dispatch was anonymous is not dispositive here. In Hlubin, supra, our Supreme Court analyzed the previous version of section 8953(a)(3), which authorized extraterritorial action "[w]here the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance." The Hlubin court read this language as requiring an officer to possess probable cause before leaving his jurisdiction in response to a request to assist another officer. See Hlubin, 208 A.3d at 1045 ("Giving meaning to the General Assembly's inclusion of the word 'otherwise' necessitates that the reference to 'probable cause' applies to both the first and second situations in the subsection—and thus to instances where aid and assistance is requested or where provided in response to a belief that another officer is in need of the same."). The legislature's amendment of section 8953(a)(3) pointedly omits any requirement that an officer possess probable cause where his extraterritorial assistance is requested. See 42 Pa.C.S.A. § 8953(a)(3)(i). Once Officer Simms observed Cogar's vehicle in Franklin Township and began following it, he observed conduct that Cogar concedes provided reasonable suspicion to conduct a traffic stop. See Brief of Appellant, at 10 ("Not until outside his jurisdiction does [Officer Simms] observe any conduct that gives him any reasonable suspicion or probable cause to conduct the traffic stop[.]"). Finally, we note that Cogar recites the superseded version of the statute in his brief and does not acknowledge either Hlubin or the subsequent amendment to section 8953(a)(3).