**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Larry Steven LAIRD, Appellant.**

Superior Court of Pennsylvania.

Argued May 17, 2001.

Filed April 24, 2002.

Paul B. Orr, Carlisle, for appellant.

Daniel W. Stern, Assistant District Attorney, New Bloomfield, for Commonwealth, appellee.

BEFORE: CAVANAUGH, STEVENS, and TAMILIA, JJ.

STEVENS, J.

¶ 1 This is an appeal from the judgment of sentence entered after the Court of Common Pleas of Perry County convicted Appellant for driving under the influence of alcohol ("DUI"),[1] driving while operating privilege is suspended—DUI related,[2] and other motor vehicle summary offenses. Appellant's sole question on appeal is whether the trial court should have granted his motion to suppress evidence obtained by police officers who stopped him outside their primary jurisdiction. We affirm.

¶ 2 On June 8, 1999, at approximately 11:30 p.m., Newport Borough Police Officers Carl Lehman and Richard Behne, Jr. were patrolling the borough when they observed Appellant's vehicle one hundred feet away driving on Market Street with

---

**1.** 75 Pa.C.S. § 3731(a)(1).

**2.** 75 Pa.C.S. § 1543(b)(1).

an inoperative taillight. N.T. 2/2/00 at 6. The officers immediately turned onto Market Street to follow, but Appellant was already nearing the Market Street Bridge, which represented the end of the officers' jurisdiction. N.T. 2/2/00 at 6, 14.

¶ 3 Two contemporaneous circumstances persuaded the officers not to stop Appellant before he reached the bridge. First, the officers determined that the final two hundred feet of Market Street leading up to the bridge could not safely accommodate a traffic stop. Thus, they decided to wait until a safe spot became available on the other side. N.T. 2/2/00 at 6–7. Second, the officers observed Appellant's car cross the center yellow line as they pursued him, and they elected to monitor Appellant on suspicion of DUI. N.T. 2/2/00 at 6–7. Consequently, Appellant crossed the bridge under the officers' watch and drifted across the center yellow line two more times in the next mile before the officers directed him to pull into a State Police Barracks. N.T. 2/2/00 at 8. Appearing drunk and failing two sobriety tests, Appellant was arrested for DUI, no rear lights, and other related charges. N.T. 7/22/99 at 7.

¶ 4 Prior to trial, Appellant filed an omnibus pre-trial motion alleging that the officers violated the Pennsylvania Municipal Police Jurisdictional Act, 42 Pa.C.S. §§ 8951–8954 ("MPJA") when they stopped Appellant in a neighboring jurisdiction. Following a hearing on February 2, 2000, the trial court denied Appellant's motion to suppress.

¶ 5 The court acknowledged that the MPJA exception contained in 42 Pa.C.S. § 8953(a)(2), *infra,* permits law enforcement officers to make extraterritorial traffic stops which stem from a hot and fresh pursuit of an individual who commits an offense in the officers' primary jurisdiction. Based on testimony offered at the hearing, the court made findings of fact that probable cause to stop Appellant first arose when the officers observed the taillight infraction in Newport.[3] The court also found that the officers engaged in hot pursuit of Appellant, but could not stop Appellant safely within Newport. The court concluded, therefore, that the nature of the officers' pursuit was such that the MPJA permitted them to stop Appellant outside their jurisdiction.

¶ 6 A non-jury trial immediately followed, and the trial court convicted Appellant on the above charges. Appellant was sentenced to serve a county prison sentence of six months to two years-less-one-day on the third-offense DUI conviction, to run consecutively to a county prison sentence of ninety days on the driving with a suspended license conviction. Pending the present appeal, Appellant remains on bail.

¶ 7 Appellant raises two interrelated issues for our review:

I. WHETHER THE SUPPRESSION COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS WHEN THE OFFICERS STOPPED THE APPELLANT'S VEHICLE OUTSIDE THEIR PRIMARY JURISDICTION, YET NEVER ENGAGING IN HOT PURSUIT OF APPELLANT'S VEHICLE?

II. WHETHER THE RECORD AS A WHOLE SUPPORTS THE COURT'S FACTUAL FINDINGS THAT THE OFFICERS DELAYED PULLING OVER THE APPELLANT'S VEHICLE BECAUSE THERE WAS NO SAFE

---

**3.** The court excluded from its probable cause inquiry the officers' testimony that Appellant crossed the yellow line twice in the neighboring jurisdiction.

PLACE WITHIN THEIR JURIS-
DICTION TO INITIATE A STOP?

Brief for Appellant at 7.

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177, 178–79 (1992).

¶ 8 The trial court denied Appellant's motion to suppress because it found the police officers' actions were authorized under MPJA exceptions to general prohibitions against extraterritorial police acts. The MPJA exception relied upon by the court provides, in pertinent part, as follows:

§ 8953. Statewide municipal police jurisdiction

(a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

\*\*\*

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S. § 8953(a)(2). The Statutory Construction Act of 1972 provides that the MPJA is not within the class of statutes to be strictly construed; rather, courts must construe the MPJA liberally to promote the interests of justice. 1 Pa.C.S. § 1928(b), (c); *Commonwealth v. Fetsick*, 392 Pa.Super. 264, 572 A.2d 793 (1990).

¶ 9 One of the principal purposes of the MPJA is to promote public safety while placing a general limitation on extraterritorial police patrols. *Commonwealth v. Merchant*, 528 Pa. 161, 167, 595 A.2d 1135, 1138 (1991). It is in the interest of promoting public safety, therefore, that the MPJA exceptions contemplate and condone "extra-territorial activity in response to specifically identified criminal behavior that occur[s] within the primary jurisdiction of the police." *Fetsick*, 572 A.2d at 795 (quoting *Commonwealth v. Merchant*, 385 Pa.Super. 264, 560 A.2d 795, 799 (1989)).

■ ¶ 10 Appellant first contends that the MPJA did not authorize the stop because the officers never engaged in a "hot pursuit" as required under MPJA exception 8953(a)(2). This Court has clarified that "hot pursuit" entails some sort of chase, though the chase need not involve a "fender smashing Hollywood style chase scene" or be newsworthy. *Commonwealth v. McPeak*, 708 A.2d 1263, 1266 (Pa.Super.1998) (citations omitted).

¶ 11 Testimonial evidence supports the court's finding that the officers gave chase upon first seeing Appellant's taillight infraction, but tempered the chase to avoid a potentially hazardous traffic stop just before the bridge. Appellant made no attempt to impeach the officers' testimony on this point, nor did he proffer evidence that a stop within Newport would have been reasonably safe.[4] Therefore, we find no error in the conclusion that the officers hotly pursued Appellant until they made the reasonable assessment that an extraterritorial stop was unavoidable.

¶ 12 It is clear, however, that the officers deferred their chase as they entered the neighboring jurisdiction in order to monitor Appellant for possible DUI. The very purpose of the MPJA is to proscribe such investigatory, extraterritorial forays used to acquire additional evidence where probable cause does not yet exist, and the suppression of such evidence obtained

from such forays is an appropriate remedy under the MPJA. *See McPeak*, 708 A.2d at 1267 (acknowledging authority exists to suppress for substantial MPJA violation). Nonetheless, we find that the officers' actions did not require suppression of all evidence against Appellant, for the officers properly acquired probable cause to stop Appellant while still in their primary jurisdiction, and, additionally, because the trial court considered only evidence obtained within the primary jurisdiction and after the valid stop.

¶ 13 This Court has held that the subjective question of whether an officer's actions constituted hot and fresh pursuit should not stand in the way of an otherwise valid arrest where extraterritorial pursuit is in response to a specific crime that occurred in the primary jurisdiction. *McPeak*, 708 A.2d at 1267.[5] There is no dispute that, while still in Newport, the officers obtained probable cause to stop

4. In his second argument, Appellant contends that the officers' failure at the preliminary hearing to explain the cause for an extraterritorial stop was proof that they fabricated the reason given at the suppression hearing. Appellant is correct that neither the officers' affidavit of probable cause nor their preliminary hearing testimony mentioned the prospective danger of stopping Appellant in Newport. However, the record shows that the MPJA issue was not raised until Appellant broached the topic in his closing argument at the preliminary hearing. Indeed, the officers had directed their preliminary hearing testimony solely to establishing sufficient facts to support the charges against Appellant, not to the grounds justifying an extraterritorial stop, and, on cross-examination, Appellant never asked them to explain why they delayed the stop. The officers' subsequent suppression hearing testimony, therefore, did not contradict their earlier testimony, but rather addressed for the first time an issue that had been raised after they had last testified. We find such testimonial addition, by itself, insufficient reason to reverse the trial court's determination that the officers testified truthfully at the suppression hearing.

5. Contrary to Appellant's contention, the Pennsylvania Supreme Court in *Commonwealth v. Merchant*, 528 Pa. at 170, 595 A.2d at 1139, did not reject this Court's discussion about the proper remedy for an extraterritorial stop made without hot pursuit when it vacated our decision in *Commonwealth v. Merchant*, 385 Pa.Super. 264, 560 A.2d 795 (1989), in which we vacated judgment of sentence and reversed the order denying suppression. Rather, because it found the stop in question was authorized by another section of the MPJA, the Supreme Court merely instructed that our discussion on Section 8953(a)(2) became theoretical and not legally binding. In a subsequent case, this Court reintroduced the discussion and held "Therefore, even if the police were not in hot and fresh pursuit, their behavior was action contemplated by the MPJA and would only constitute a technical violation of the statute. Thus, suppression of the evidence would be inappropriate in the instant case." *McPeak*, 708 A.2d at 1267. We adopt the same reasoning in the present case.

Appellant for driving a vehicle with a broken taillight. *See* 75 Pa.C.S.A. § 6308(b); 75 Pa.C.S.A. 4303(b); *Commonwealth v. Sebek*, 716 A.2d 1266 (Pa.Super.1998) (holding that police officers have authority to stop a vehicle for failure to have a working taillight). When coupled with the officers' immediate hot pursuit within Newport, the acquisition of such probable cause enabled the officers to execute an extraterritorial stop under the MPJA. Therefore, Appellant would have been properly stopped in the neighboring jurisdiction regardless of whether the officers complied with the MPJA's hot pursuit requirement once they left Newport, and he would have been arrested for appearing drunk and for failing field sobriety tests. Accordingly, we find that suppression of all evidence would have been an inappropriate result in the present case.

¶ 14 Moreover, the trial court specifically explained that "only the evidence accumulated within the Borough and after the stop of the [Appellant] was utilized by the court in convicting the [Appellant]." Memorandum of the Trial Court, 8/3/00 at 3. The trial court thus effectively suppressed the evidence of Appellant's ostensibly unsafe driving obtained during the one-mile extraterritorial surveillance and relied upon only evidence that would have existed had a continuous hot pursuit occurred.[6] Accordingly, we find no error in the court's cautious exercise of judgment.

¶ 15 For the foregoing reasons, the judgment of sentence against Appellant stands.

¶ 16 Judgment of sentence affirmed.

---

**6.** We note that, even without the evidence of unsafe driving in the neighboring jurisdiction, the remaining evidence that Appellant crossed the yellow line once in Newport, appeared intoxicated after the stop, and failed two sobriety tests sufficed to convict Appellant of 75

¶ 17 CAVANAUGH, J., CONCURS IN THE RESULT.

Pa.C.S. § 3731(a)(1). *See Commonwealth v. Downing*, 739 A.2d 169, 173 (Pa.Super.1999) (holding that evidence the driver was not in control of himself, such as failing to pass a field sobriety test, could establish a violation of Section 3731(a)(1)).