965 A.2d 222

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Randy Allan PETERS, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 8, 2008.

Decided Feb. 19, 2009.

Michael Robert Hadley, Michael R. Hadley, P.C., for Randy Allan Peters, appellant.

Marie T. Veon, James Paul Carbone, Venango County district Attorney's Office, for the Com. of Pennsylvania, appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## *OPINION*

Chief Justice CASTILLE.

The order of the Superior Court is affirmed for the reasons ably set forth in the Superior Court opinion, which opinion is adopted as the opinion of this Court on the "hot" and "fresh pursuit" question. *See Commonwealth v. Peters,* 915 A.2d 1213 (Pa.Super.2007). We supplement the opinion as follows.

This Court granted review to determine whether the extraterritorial arrest of appellant was authorized under the Municipal Police Jurisdiction Act ("MPJA"), 42 Pa.C.S. §§ 8951–8954, specifically, the MPJA's "hot pursuit" exception, 42 Pa.C.S. § 8953(a)(2). Section 8953 of the MPJA governs statewide municipal police jurisdiction and provides in pertinent part:

(a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within

the territorial limits of his primary jurisdiction in the following cases:

\* \* \* \*

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S. § 8953(a)(2).[1]    While this Court has examined extraterritorial authority within the confines of the MPJA[2] and outside its reach,[3] we have not directly considered the

---

1.   Section 8953 replaced the Intra–State Hot Pursuit statute, 42 Pa.C.S. § 8901 (repealed 1982), which provided:

Any police officer of any political subdivision may arrest with or without warrant any person beyond the territorial limits of such political subdivision for a summary or other offense committed by such person within such political subdivision if the officer continues in pursuit of such person after commission of the offense.   The police officer shall exercise under this section only the power of arrest which he would have if he were acting within the territorial limits of his political subdivision.

2.   *See, e.g., Martin v. Dep't of Transp.*, 588 Pa. 429, 905 A.2d 438 (2006) (extraterritorial conduct not authorized as hot pursuit under Section 8953(a) without probable cause or under Section 8953(a)(5) if not on "official business"); *Commonwealth v. Lehman*, 582 Pa. 200, 870 A.2d 818 (2005) (Section 8953(a)(5) authorizes extra-jurisdictional detention where on-duty officer develops probable cause in primary jurisdiction and limits out-of-jurisdiction activities to maintaining status quo until officers from appropriate jurisdiction arrive); *Commonwealth v. McCandless*, 538 Pa. 286, 648 A.2d 309 (1994) (because officer lacked probable cause to believe an offense had been committed within his primary jurisdiction, Section 8953(a)(2) not applicable); *Commonwealth v. Pratti*, 530 Pa. 256, 608 A.2d 488 (1992) (under Section 8953(a)(5) ("official business" exception), officer on routine patrol permitted to stop vehicle outside jurisdiction on suspicion of DUI); *Commonwealth v. Merchant*, 528 Pa. 161, 595 A.2d 1135 (1991) (subsections of Section 8953(a) provide separate, and independent justifications for permitting police action outside of primary jurisdiction) (officer permitted to stop and detain suspect under Section 8953(a)(5) because officer on routine patrol, *i.e.*, on official business); *Commonwealth v. O'Shea*, 523 Pa. 384, 567 A.2d 1023 (1989) (six subsections of Section 8953(a) are not "all-encompassing of any activity that an officer may conduct outside of his primary jurisdiction, no matter how informal or unobtrusive").

3.   *See, e.g., McKinley v. Dep't of Transp.*, 576 Pa. 85, 838 A.2d 700 (2003)

subsection (a)(2) "hot pursuit"/"fresh pursuit" language of Section 8953.

On October 8, 2003, at approximately 10:15 p.m., appellant hit a telephone pole in the Borough of Sugarcreek, causing damage to, *inter alia*, the telephone pole, a mailbox and a street sign. Appellant fled before the police arrived and abandoned his truck one-half mile from the accident scene in the city of Franklin. Both the Sugarcreek and Franklin police immediately reported to the accident scene, and subsequently, the two police agencies investigated the incident together. During the on-going investigation, Franklin police located appellant's truck in Franklin and alerted Sugarcreek police, who arrived at the truck's location between 10:45 p.m. and 11:00 p.m. Following appellant's phone call to Franklin police identifying himself as the person who hit the telephone pole, Franklin police contacted Sugarcreek police to inform them of the location of appellant's residence in Franklin. At approximately 11:15 p.m., Sugarcreek police, with Franklin police present, questioned appellant, performed a breathalyzer test (which appellant failed), and eventually arrested him. A blood-alcohol content ("BAC") test came back with a result of .09 percent.

Appellant filed a motion to suppress the evidence on the grounds that, *inter alia*, Sugarcreek police arrested him outside their jurisdiction without legal authority. The motion was denied. After a jury trial, appellant was found guilty of violating 75 Pa.C.S. § 3731(a)(1) (Driving Under Influence of Alcohol or Controlled Substance ("DUI")),[4] 75 Pa.C.S. § 4525(a) (Tire Equipment and Traction Surfaces) and 75

(in absence of express, legislative grant of extraterritorial authority limited jurisdiction police personnel lack ability to act as police officers in implementation of Implied Consent Law, 75 Pa.C.S. § 1547, outside territorial boundaries); *Commonwealth v. Firman*, 571 Pa. 610, 813 A.2d 643 (2002) (under Railway and Street Railway Police Act, 22 Pa.C.S. §§ 3301–3305, extraterritorial jurisdiction enabled only when there is sufficient connection to transportation system business and once enabled, absent sufficient break, its exercise may continue through investigatory stop and/or arrest).

4. Section 3731 was repealed, effective January 31, 2004, and replaced with 75 Pa.C.S. § 3802.

Pa.C.S. § 3361 (Driving Vehicle at Safe Speed). As this was his second DUI conviction, appellant was sentenced to a prison term of no less than sixty days and no more than twenty-four months, minus one day.

On appeal to the Superior Court, appellant claimed that the trial court erred in denying his motion to suppress because, *inter alia,* his arrest was in violation of Section 8953(a)(2) of the MPJA. The Superior Court affirmed in a published opinion, *Commonwealth v. Peters,* 915 A.2d 1213 (Pa.Super.2007).[5] The panel found that the arrest did not violate the MPJA because Sugarcreek police were in hot and fresh pursuit of appellant. *See* 42 Pa.C.S. § 8953(a)(2). Relying upon *Commonwealth v. McPeak,* 708 A.2d 1263 (Pa.Super.1998), the panel reasoned that " 'hot pursuit' requires some sort of chase, but does not require a 'fender-smashing Hollywood-style chase scene' nor 'police observation of the criminal activity.' [*McPeak,* 708 A.2d at 1266.] Furthermore, pursuit of a suspect may constitute a chase when it is 'based on witness information as to the location of the suspect.' *Id.* And 'fresh pursuit' requires that it be immediate, continuous and uninterrupted. *See id.*" *Peters,* 915 A.2d at 1219. The panel found Sugarcreek police were in hot and fresh pursuit of appellant when he arrived at his house in Franklin because:

> after [Sugarcreek police] received the radio call reporting the accident, [they] **immediately** began pursuing [a]ppellant, first arriving at the accident scene and then tracking him to the abandoned vehicle, and ultimately to [a]ppellant's house. The information that guided [Sugarcreek police] as [they] **chased** [a]ppellant from one scene to the next was of course provided first by witnesses, then the Franklin police, and lastly by [a]ppellant himself. Nonetheless within an approximately one hour period, [Sugarcreek police] **contin-**

5. The panel's affirmance *sub judice* is consistent with its previous interpretations of Section 8953(a)(2). *See, e.g., Commonwealth v. Laird,* 797 A.2d 995 (Pa.Super.2002) (officer's "tempered" chase of appellant in order to avoid hazardous traffic stop and eventual traffic stop lawful as hot pursuit under Section 8953(a)(2)).

**uously** pursued [a]ppellant without **interruption,** and at each step of the pursuit [they] got closer to catching him. *Id.* at 1219–20.

■ While Section 8953(a)(2) requires both "hot pursuit" and "fresh pursuit" to fulfill the exception to the MPJA, the statute does not include definitions for either form of pursuit. However, the Superior Court has defined "hot pursuit" and "fresh pursuit" under Section 8953 and has consistently applied its interpretation of each. Here, the panel ably set forth what is necessary to comply with Section 8953(a)(2). We agree that "hot pursuit" and "fresh pursuit" require some sort of investigation and tracking of the perpetrator and that that pursuit be immediate, continuous and uninterrupted.[6] The facts here support the panel's application of these standards to the instant case and thus confirm its sound findings and conclusion.

■ The arrest of appellant by Sugarcreek police was authorized under Section 8953 because they were in hot and fresh pursuit of appellant. Sugarcreek police engaged in an immediate and systematic pursuit of the person who left the scene of the accident. Further, Sugarcreek police pursued appellant continuously and without interruption for approximately one hour. It is clear that the hot and fresh pursuit exception to the MPJA was met.[7]

■ Finally, we note that the MPJA is to be construed liberally to give effect to its purposes. *Commonwealth v.*

6. In *Commonwealth v. Magwood,* 503 Pa. 169, 469 A.2d 115 (1983), while interpreting Section 8953's predecessor, 42 Pa.C.S. § 8901 (repealed 1982), this Court defined the word "pursuit" as including "both classic 'hot pursuit' and 'fresh' or 'continuous' pursuit." *Magwood,* 469 A.2d at 119. As noted above, the current statute employs both the terms "hot pursuit" and "fresh pursuit."

7. In concurrence, Mr. Justice Eakin asserts that "[t]he police did nothing wrong here[,]" and as such, he "would find [that] the facts support the propriety of the arrest and affirm the conviction." Concurring Op. at 276, 965 A.2d at 226. However, the concurrence does not explain how the Sugarcreek police conduct here can be deemed lawful if the arrest was not sanctioned under an exception to the MPJA, as the Sugarcreek police effectuated an arrest "beyond the territorial limits of [their] primary jurisdiction." 42 Pa.C.S. § 8953(a).

*Lehman,* 582 Pa. 200, 870 A.2d 818, 820 (2005). One of the intended purposes of the MPJA is to "promote public safety while maintaining police accountability to local authority; it is not intended to erect 'impenetrable jurisdictional walls benefit[ing] only criminals hidden in their shadows.'" *Id.* (quoting *Commonwealth v. Merchant,* 528 Pa. 161, 595 A.2d 1135, 1139 (1991)). Although the initial accident occurred on Meadville Pike in Sugarcreek, Meadville Pike is a street where one side is patrolled by Sugarcreek and the other side is patrolled by Franklin. Sugarcreek and Franklin police worked in conjunction with one another during the entire pursuit. Franklin police notified Sugarcreek police: (1) of the location of appellant's truck in Franklin (notably only one-half mile (approximately three blocks)); (2) that appellant had contacted Franklin police; and (3) where appellant could be found for questioning. Further, both police agencies: (1) were present at the accident scene immediately after it had occurred; (2) participated in the search for appellant's truck; (3) were present during the examination of appellant's truck; and (4) were present during the questioning of appellant.

Accordingly, the order of the Superior Court is affirmed and its opinion, as herein supplemented, is adopted as that of this Court on the hot and fresh pursuit question.[8]

Justices SAYLOR and BAER, TODD, McCAFFERY and GREENSPAN join the opinion.

Justice EAKIN files a concurring opinion.

Justice EAKIN, concurring.

Although I do not disagree with the majority's result in this case, I disagree with its adoption of the Superior Court's analysis of the "hot pursuit"/"fresh pursuit" provisions of the Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S. § 8953(a)(2), pursuant to these facts.

---

**8.** Given our disposition, we do not reach or adopt the panel's alternative holding regarding the application of the exclusionary rule.

The officer here responded to a report of a vehicle hitting a telephone pole—the Superior Court held this response constituted an immediate onset of pursuit, *see Commonwealth v. Peters*, 915 A.2d 1213, 1219 (Pa.Super.2007); the majority agreed. Majority Op., at 271–74, 965 A.2d at 224–25. Such a notion could only be possible if "pursuit" means pursuing the investigation, not the culprit. According to the Superior Court's holding, the commencement of any investigation would become a pursuit, as its object is the eventual capture of the perpetrator—this is not what is contemplated by the concept of hot or fresh pursuit, statutory or otherwise. The court further stated the officer "chased" appellant "from one scene to the next." *See Peters*, at 1219–20. Clearly, there was no chasing done here—chasing connotes persons in motion, one after the other, whether in sight of one another or not. Police searched for appellant, but did not chase him anywhere. Here, appellant called the police, and other officers already arrived. The arresting officer simply drove to appellant's home; he did not "chase" appellant anywhere. It is also questionable whether the officer pursued appellant "continuously" and "without interruption"; since the theory is the "chase" started with the radio call, it must be that the half-hour on-scene investigation was not an interruption of the "chase."

The police did nothing wrong here, but there was no hot, uninterrupted pursuit that began the moment of the report of an accident. Therefore, while I would find the facts support the propriety of the arrest and affirm the conviction, I would not do so on the basis of the Superior Court's reasoning.