J-S11040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
RYAN J. TUTHILL :
:
Appellant : No. 1058 WDA 2024

Appeal from the Judgment of Sentence Entered August 26, 2024
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0002457-2023

BEFORE: MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED: May 9, 2025**

Ryan J. Tuthill ("Tuthill") appeals from the judgment of sentence imposed following his convictions for of driving under the influence of alcohol ("DUI")—general impairment, DUI—high rate of alcohol, and driving the wrong way on a one-way roadway.[1]  We affirm.

The trial court provided the following summary of the facts underlying this matter as follows:

> On January 9, 2023, Officer [Zachary] Byers was working with the Kiski Valley Police Department.  During his shift, he drove to get dinner at a local McDonald's, which is something that he was permitted to do within a five-mile radius.  [The McDonald's was located in Allegheny Township, but Officer Byers had to travel through Vandergrift Borough to get to it.]  While travelling back to his jurisdiction through Vandergrift Borough, Officer Byers was almost struck head-on by [Tuthill's] vehicle.  He testified that [Tuthill's] vehicle attempted to make a right-hand turn against traffic and into his lane of travel.

---

[1] **See** 75 Pa.C.S.A. §§ 3802(a)(1) and (b), 3308(b).

Officer Byers then conducted a traffic stop of [Tuthill's] vehicle while outside of his jurisdiction in Vandergrift Borough. He testified that he conducted the stop for safety purposes due to [Tuthill] almost causing an accident. Officer Byers additionally spoke with [Tuthill] and noticed that he had bloodshot glossy eyes and smelled of alcohol. Officer Byers contacted the Vandergrift Borough Police Department to take over the investigation since it was their jurisdiction. Officers [Daniel] Anthony and Zemba thereafter arrived on scene and Officer Byers did not conduct any further investigation in the case.

Trial Court Opinion, 10/18/24, at 2-3 (footnotes and citations to the record omitted).[2]

Vandergrift Borough police arrested Tuthill and charged him with, *inter alia*, DUI and driving the wrong way. Tuthill filed an omnibus pretrial motion to suppress in which he argued that the traffic stop was unlawful because it was conducted by an officer who was acting outside of his jurisdiction and his actions were not in compliance with the Municipal Police Jurisdiction Act ("MPJA"), 42 Pa.C.S.A. §§ 8951-8954. The trial court conducted a hearing on the motion, and subsequently entered an order denying the motion. The matter then proceeded to a non-jury trial at which Tuthill requested reconsideration of his suppression motion. The trial court again denied suppression, and thereafter found him guilty of the above charges. On August 26, 2024, the court sentenced Tuthill to forty-eight hours to six months

---

[2] Officer Zemba's first name does not appear in the record.

- 2 -

incarceration. Tuthill filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Tuthill raises the following issue for our review: "Whether the court committed reversible error by failing to conclude that the officer who initiated the traffic stop did so in violation of 42 Pa.C.S.A. § 8953, thus warranting suppression of all evidence. Tuthill's Brief at 7 (unnecessary capitalization omitted).

Our standard of review of an order denying suppression is well-settled:

> When we review the ruling of a suppression court[,] we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

**Commonwealth v. Hicks**, 208 A.3d 916, 925 (Pa. 2019) (citation omitted). Our scope of review of the suppression court's factual findings is limited to the suppression hearing record. **See Commonwealth v. Barr**, 266 A.3d 25, 39 (Pa. 2021) (citations omitted). However, as an appellate court, we are not bound by the suppression court's conclusions of law. **See Hicks**, 208 A.3d at 925. Rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary. **See id**.

The MPJA governs statewide municipal police jurisdiction. The MPJA defines the "primary jurisdiction" of municipal police officers as "[t]he

geographical area within the territorial limits of a municipality or any lawful combination of municipalities which employs a municipal police officer." 42 Pa.C.S.A. § 8951. The MPJA also recognizes certain instances where municipal police officers may legitimately stop an individual outside of their primary jurisdiction, including when an officer is on official business and views an offense:

(a) General rule.--Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

* * * *

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S.A. § 8953(a)(5).

The MPJA is to be construed liberally to give effect to its purposes. *See Commonwealth v. Peters*, 965 A.2d 222, 225 (Pa. 2009). One of the intended purposes of the MPJA is to promote public safety while maintaining police accountability to local authority. *See id*. The MPJA is not intended to erect impenetrable jurisdictional walls benefiting only criminals hidden in their shadows. *See id*. In noting the public safety purpose of the MPJA, our Supreme Court has held that a technical violation of MPJA does not always

- 4 -

warrant suppression of evidence. ***See Commonwealth v. O'Shea***, 567 A.2d 1023, 1030 (Pa. 1989). Rather, when deciding suppression issues based on MPJA infractions, a reviewing court must engage in a case-by-case analysis, based on the totality of the circumstances presented. ***See Commonwealth v. Borovichka***, 18 A.3d 1242, 1250 (Pa. Super. 2011).

In interpreting section 8953(a)(5), our Supreme Court has ruled that it authorizes an extrajurisdictional detention where the detaining officer is on-duty outside his or her jurisdiction for a routine or customary reason, including responding to an exigent circumstance, and develops probable cause to believe an offense has been committed; however, section 8953(a)(5) limits out-of-jurisdiction activities to maintaining the *status quo*, including detaining the suspect, until officers from the appropriate jurisdiction arrive. ***See Commonwealth v. Lehman***, 870 A.2d 818, 821 (Pa. 2005). In ruling that a police officer did not violate the MPJA, the High Court considered the reasonableness of the officer's actions and the fact that he had "not engaged in an extrajurisdictional fishing expedition nor an attempt to expand his sphere of power." ***Id***. at 821.

In reaching its conclusion, the High Court relied on its prior decisions in ***Commonwealth v. Merchant***, 595 A.2d 1135, 1139 (Pa. 1991), and ***Commonwealth v. Pratti***, 608 A.2d 488, 490 (Pa. 1992), both of which are factually similar to the instant matter. In ***Merchant***, two on-duty officers of the Etna Police Department were traveling through the Borough of Aspinwall,

as was customary in order to reach a limited access highway through Etna, when they noticed a car cross the centerline and nearly strike an oncoming vehicle. The officers stopped the car, determined its driver was intoxicated, and detained him until the Aspinwall police arrived. The defendant claimed the MPJA did not authorize his detention by the out-of-jurisdiction Etna officers. Our Supreme Court disagreed, finding the officers were on "official business" within the meaning of section 8953(a)(5) in traveling their usual route as part of their routine responsibilities. *See Merchant*, 595 A.2d at 1139. The High Court further held that the officers, upon seeing the defendant nearly strike an oncoming vehicle, had probable cause to believe an offense had been committed, and noted the Etna officers "limited the impact of their activities outside their primary jurisdiction by merely detaining [the defendant] while awaiting arrival of the Aspinwall police." *See id*.

Similarly, in *Pratti*, an on-duty officer of the Millvale Borough Police Department, consistent with routine practice, crossed into Shaler Township to turn around in a service station parking lot. While in the parking lot, the officer heard a loud noise that sounded like a car accident, so he drove further into Shaler Township to investigate. The officer came upon a stop sign lying in the road and saw a car ahead of him swerving back and forth across the centerline. The officer stopped the vehicle, observed its driver was intoxicated, and summoned the Shaler Township Police Department. The defendant claimed the MPJA did not authorize his detention by the out-of-

jurisdiction Millvale officer. Our Supreme Court disagreed, finding the officer was on "official business" within the meaning of section 8953(a)(5) when he made the routine turnaround, notwithstanding his stated intention to stop at the mini-market to buy a refreshment prior to returning to his jurisdiction to patrol, and holding the officer had an affirmative duty to investigate a suspected car accident and render assistance if necessary. **See Pratti**, 608 A.2d at 490. The High Court further held the officer, upon seeing the fallen stop sign and swerving car, had the requisite probable cause to stop the defendant under section 8953(a)(5). **See id**.

Turning to the instant matter, Tuthill argues that the trial court erred by denying suppression where the arresting officer was not only out of his jurisdiction, but was in an entirely different county, for the sole purpose of getting food at McDonald's. Tuthill contends that there was no testimony offered that the officer had left his jurisdiction while on "routine patrol," nor that his mission to get food was part of his "usual responsibilities." Tuthill maintains that this was not a minimal deviation into another jurisdiction. Tuthill recognizes that the MPJA is not meant to be an impenetrable wall only benefitting defendants who happened to commit their crimes in the right spot to trigger a jurisdictional issue. Nonetheless, Tuthill claims that Officer Byers' illegal actions completely eliminated his own accountability to local authority because the officer's jurisdiction was never implicated, and he was not operating in the same county of his jurisdiction. Tuthill posits that "Officer

Byers essentially went rogue, enforcing laws which he had no authority to enforce under the MPJA, with no oversight from either his own jurisdiction nor from the jurisdiction in which he was illegally enforcing the law." Tuthill's Brief at 12.

The trial court considered Tuthill's issue and determined that it lacked merit. The court reasoned:

> In the instant case, this court found that the traffic stop that was conducted by Officer Byers did not violate the MPJA. Moreover, Officer Byers was on "official business" when he stopped [Tuthill]. Specifically, on January 9, 2023, [O]fficer Byers was working on routine patrol with the Kiski Township Police Department. He testified that, while on patrol, he was permitted to exit his jurisdiction to get food within a five-mile radius. Upon his return to his primary jurisdiction, Officer Byers was almost struck head-on by [Tuthill's] vehicle. He thereafter conducted a traffic stop of [Tuthill's] vehicle for safety purposes and immediately contacted local authorities. Officer Byers was outside of his jurisdiction for a routine or customary reason and limited his out-of-jurisdiction activities to detaining the suspect until officers from the appropriate jurisdiction arrived. Like in **Pratti**, Officer Byers was still on routine patrol at the time of the incident despite his intention to leave his primary jurisdiction to obtain food. Furthermore, as previously stated, the MPJA's provisions are to be construed liberally in order to achieve its purposes, including promoting public safety, which is what Officer Byers was concerned about in this case.
>
> Additionally, even if the actions of officer Byers violated the MPJA, application of the exclusionary rule was inappropriate.
>
> Pennsylvania Courts have held that even in cases where extraterritorial actions of police officers do not fall within the MPJA, suppression is not automatically appropriate. Courts should consider the totality of the circumstances of the case in determining whether suppression is the appropriate remedy. . . .

> \* \* \* \*

In the instant case, upon review of the totality of the circumstances, application of the exclusionary rule is not appropriate. Officer Byers clearly did not enter Vandergrift Borough to conduct extraterritorial patrol, to embark on a fishing expedition, or any business. Rather, he was travelling back to his primary jurisdiction after getting food which is something that he was permitted to do. Officer Byers otherwise followed the proper procedure after momentarily detaining [Tuthill] and his actions were consistent with the letter and spirit of the MPJA. Ultimately, any violation of the MPJA by Officer Byers was unintentional and does not warrant application of the exclusionary rule.

Trial Court Opinion, 10/18/24, at 11-12, 15 (citations to the record and unnecessary capitalization omitted).

Based on our review, we conclude that the suppression record supports the trial court's ruling. Here, Officer Byers was acting on official business within the meaning of section 8953(a)(5) when he drove a few miles away, into a neighboring jurisdiction, for the routine and customary reason to obtain food during his patrol shift. When he was *en route* to return to his jurisdiction, his police vehicle was nearly struck head-on by Tuthill's vehicle, which Tuthill was operating in the wrong direction on a one-way street. Thus, Officer Byer not only viewed a serious traffic offense, but was almost a victim of the offense. Moreover, the erratic and illegal driving that Officer Byer observed "presented an immediate clear and present danger to persons or property" as contemplated by section 8953(a)(5). Finally, the officer's actions were reasonable, as he did not engage in a fishing expedition, and he was not attempting to expand his power. **See Lehman**, 870 A.2d at 821. Instead, Officer Byers immediately contacted Vandergrift Borough police, and limited

- 9 -

his out-of-jurisdiction activities to maintaining the *status quo*, including detaining Tuthill until officers from Vandergrift Borough arrived and thereafter conducted DUI protocol. ***See id***. Thus, as provided by section 8953(a)(5), there was no violation of the MPJA.

Furthermore, even if we were to conclude that Officer Byer was in technical violation of the MPJA, we would still affirm the suppression order of the trial court. As our Supreme Court has explained, "suppression of evidence may or may not be the appropriate remedy for a violation of section 8953 of the Act, depending upon all of the circumstances of the case including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the [MPJA], and the prejudice to the accused." ***O'Shea***, 567 A.2d at 1030. Here, any perceived technical violation of section 8953 was unintentional and not designed to embark on a fishing expedition in hopes of gathering more evidence to reach a determination of probable cause. Instead, Officer Byer observed a traffic violation and was nearly a victim of such violation. Had the officer not acted in immediately conducting a traffic stop, Tuthill may have injured himself or others if he continued to drive while under the influence of alcohol. Accordingly, we conclude that excluding evidence of Tuthill's DUI and traffic violations based on a perceived technical infraction of the MPJA would be a remedy out of all proportion to the infraction. ***See id***. (holding that "[a]utomatic exclusion of evidence obtained by searches accompanied by relatively minor infractions of the rules of criminal procedure

would be a remedy out of all proportion to the violation, or to the benefits gained to the end of obtaining justice while preserving individual liberties"). Accordingly, even if Officer Byers' actions were not specifically authorized by section 8953, we conclude Tuthill is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/09/2025