J-A02023-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES LEROY GARRISON JR. | : | |
| | : | |
| Appellant | : | No. 600 WDA 2025 |

Appeal from the Judgment of Sentence Entered May 9, 2025
In the Court of Common Pleas of Mercer County Criminal Division at
No(s): CP-43-CR-0001538-2024

BEFORE: STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: February 19, 2026**

James Leroy Garrison, Jr. (Appellant), appeals from the judgment of sentence imposed following his jury conviction of firearms not to be carried without a license.[1]  Appellant argues the trial court erred by denying his pre-trial suppression motion because the arresting officer was acting beyond his primary jurisdiction when he effectuated a traffic stop of Appellant.  After careful review, we affirm.

The trial court summarized the relevant factual history as follows:

On October 23, 2024, a patrol officer with the City of Hermitage Police Department[, Officer Zachry Barrett (Officer Barrett),] was patrolling the Shenango Park Apartments.  While driving through the parking lot, [Officer Barrett] observed a [parked] black Subaru

---

[1] 18 Pa.C.S.A. § 6106(a)(2).

station wagon which was registered to [Appellant[2]] and Alexandra A. Cornelious ("Cornelious"), with a listed address in Farrell, Pennsylvania. A male, later identified as Appellant, was seen standing near the open rear driver-side door of the vehicle. A check [of Officer Barrett's in-cruiser computer] … revealed Appellant held only a Pennsylvania photo identification card, also listing the aforementioned Farrell address[, but no driver's license].

Shortly thereafter, the vehicle exited the area. [Officer Barrett] followed Appellant for roughly a mile, **inadvertently moving into the jurisdiction of the Farrell Police Department before initiating a traffic stop**. Upon approaching the passenger side, [Officer Barrett] observed two occupants: Appellant, who was driving, and Cornelious in the front passenger seat. In plain view, [Officer Barrett] observed a Glock handgun resting on the vehicle's center console. Appellant immediately acknowledged the firearm and stated it was unloaded. [Officer Barrett] confirmed there was no magazine inserted and requested Appellant hand over the weapon[. ] Appellant complied, and said firearm was then placed on the vehicle's roof. A large knife was also visible between Appellant and the center console.

Appellant was asked to exit the vehicle and consented to a search of his person, which yielded no contraband. Upon inquiry, Appellant stated he had purchased the firearm in a parking lot in Ohio from a retired police officer[,] but had never transferred ownership into [Appellant's] name. Appellant permitted the officer to check the firearm's serial number, which returned no record of theft. Appellant further indicated he did not possess a concealed carry permit and acknowledged a prior aggravated assault charge out of Kansas, which he stated had been expunged. He also disclosed a loaded magazine was located in the vehicle's cupholder.

Both Appellant and Cornelious gave verbal consent for a full search of the vehicle, which[, Officer Barrett] explained[,] would include all containers and compartments[,] and could be

---

[2] The trial court refers to Appellant as "the Defendant/Appellant" throughout its opinion. For simplicity, we have replaced this designation with "Appellant" in quoted portions of the opinion.

terminated at any time. During the search, [Officer Barrett] recovered a loaded magazine and a black holster near the center console. The magazine contained sixteen live 9mm rounds. No other contraband was discovered. The handgun and magazine were located within close proximity—several inches apart—and could be loaded within seconds.

The firearm was secured and transported to the Hermitage Police Department, where it was photographed and logged into evidence. Appellant subsequently arrived at the department voluntarily, was fingerprinted, and released. Appellant was charged with one count of firearm not to be carried without a license, a violation of 18 Pa.C.S.A. § 6106(a)(2), graded as a first-degree misdemeanor.

Rule 1925(a) Opinion, 7/9/25, at 1-3 (unnumbered) (footnote and emphasis added).

Appellant appeared *pro se* for his preliminary hearing on November 19, 2024, at which time the charge was held for court. Appellant also appeared *pro se* for his arraignment on January 21, 2025. Later the same day, Appellant completed an intake interview with the Mercer County Public Defender's Office; his application was approved; and the Public Defender's Office assigned Vincent P. Nudi, Esquire (Attorney Nudi), to represent Appellant.[3]

According to Attorney Nudi, the Public Defender's Office assigned the case to him "for purposes of housekeeping and records," but he was not notified of the assignment "until immediately prior to [Appellant's] scheduled Call of the List date of March 3, 2025." Appellant's Brief at 6. Attorney Nudi additionally detailed the following:

---

[3] The trial court's order appointed "A Public Defender" as counsel.

- 3 -

> Due to the fact that the [Public Defender's Office] did not represent [Appellant] until subsequent to his arraignment, no request for discovery was made. Upon notification that [Appellant's] case had been added to [Attorney Nudi's] case list, [Attorney Nudi] began in-person as well as telephone negotiations with the Commonwealth. During those discussions, [an] informal request for discovery was made to the Commonwealth[,] which was honored within a reasonable amount of time. Once [Attorney Nudi] was provided a copy of discovery, a potential suppression [issue] was revealed….

*Id.* (some capitalization modified).

On March 11, 2025, Appellant filed a *nunc pro tunc* omnibus pre-trial motion (suppression motion). Appellant argued that he was subject to an unlawful traffic stop and arrest, as Officer Barrett was outside his primary jurisdiction when the stop occurred. The trial court conducted a hearing on the suppression motion prior to the start of jury selection on March 12, 2025. At the close of the hearing, the court denied Appellant's suppression motion.

The case immediately proceeded to a jury trial on March 12-13, 2025. The parties stipulated that 1) the firearm recovered from Appellant's vehicle was operable; and 2) Appellant did not have a license to carry firearms. **See** Commonwealth's Exhibits 3 and 4. The jury convicted Appellant of firearms not to be carried without a license. The trial court deferred sentencing for the preparation of a pre-sentence investigation report. On May 9, 2025, the trial court sentenced Appellant to two years of probation.

This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue for review: "Did the trial court err in denying [Appellant's] omnibus motion for pre-trial relief[,] thereby refusing to suppress evidence[?]" Appellant's Brief at 4.[4]

In addressing a challenge to the denial of a suppression motion, this Court

> is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Fletcher*, 307 A.3d 742, 745-46 (Pa. Super. 2023) (citation and brackets omitted). "Our scope of review of suppression court factual findings is limited to the suppression hearing record." *Commonwealth v. Barr*, 266 A.3d 25, 39 (Pa. 2021).

Appellant argues the trial court erred by failing to suppress the physical evidence recovered following the traffic stop. Appellant's Brief at 12. Appellant claims that Officer Barrett was outside his jurisdiction when he stopped Appellant, and Officer Barrett's actions were not in compliance with

---

[4] Appellant withdrew his additional challenge to the sufficiency of the evidence supporting his conviction. Appellant's Brief at 4.

the Municipal Police Jurisdiction Act (MPJA).[5] *Id.* at 13-14. Instead, Appellant asserts, Officer Barrett ascertained the traffic infraction (*i.e.*, Appellant was driving without a driver's license) while he was within his jurisdiction, but intentionally waited until he left his jurisdiction before effectuating the stop. *Id.* at 14; *see also id.* at 16 (pointing to Officer Barrett's suppression testimony that Appellant was not "fleeing").

The MPJA governs statewide municipal police jurisdiction. The MPJA defines "primary jurisdiction" as "[t]he geographical area within the territorial limits of a municipality or any lawful combination of municipalities which employs a municipal police officer…. 42 Pa.C.S.A. § 8951; *see also id.* (defining "municipal police officer" as "[a]ny natural person who is properly employed by a municipality, including a home rule municipality, as a regular full-time or part-time police officer.").

In general, municipal police officers are authorized to act only within their primary jurisdiction:

> Any duly employed municipal police officer shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office anywhere within his primary jurisdiction as to:
>
> (1) Any offense which the officer views or otherwise has probable cause to believe was committed within his jurisdiction.
>
> (2) Any other event that occurs within his primary jurisdiction and which reasonably requires action on the part of the police

---

[5] 42 Pa.C.S.A. §§ 8951-8954.

in order to preserve, protect or defend persons or property or to otherwise maintain the peace and dignity of this Commonwealth.

*Id.* § 8952.

However, section 8953 details particular circumstances in which a municipal police officer may stop an individual beyond the territorial limits of his jurisdiction. Instantly, during the suppression hearing, Appellant challenged the applicability of the "hot pursuit" exception, which is set forth at section 8953(a)(2) and provides as follows:

> **(a) General rule.--**Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
>
> * * *
>
> (2) Where the officer is in hot pursuit of any person for the offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

*Id.* § 8953(a)(2).

Our Supreme Court has stated that "the MPJA should be liberally construed to achieve its purposes…." ***Commonwealth v. Lehman***, 870 A.2d 818, 820 (Pa. 2005). As the ***Lehman*** Court also explained,

> [t]he MPJA is intended to promote public safety while maintaining police accountability to local authority; it is not intended to erect "impenetrable jurisdictional walls benefiting only criminals hidden in their shadows."

*Id.* (citing ***Commonwealth v. Merchant***, 595 A.2d 1135, 1138 (Pa. 1991) (brackets omitted)); ***see also Commonwealth v. Chernosky***, 874 A.2d 123, 130 (Pa. Super. 2005) (*en banc*) ("The purpose of the MPJA is to proscribe investigatory, extraterritorial forays used to acquire additional evidence where probable cause does not yet exist."). Moreover, "a technical violation of MPJA does not always warrant suppression of evidence." ***Commonwealth v. Borovichka***, 18 A.3d 1242, 1249 (Pa. Super. 2011) (citing ***Commonwealth v. O'Shea***, 567 A.2d 1023, 1030 (Pa. 1989)). Instead, a court must consider the totality of the circumstances when determining whether suppression is the appropriate remedy for a violation of the MJPA. *Id.*

Instantly, the trial court concluded, in its Rule 1925(a) opinion, that Appellant's suppression motion was "substantively and procedurally meritless." Rule 1925(a) Opinion, 7/9/25, at 11 (unnumbered). The court explained Appellant's suppression motion was untimely filed under Pa.R.Crim.P. 579 (requiring an omnibus pre-trial motion to be filed within 30 days following a defendant's arraignment), and Appellant did not offer an extraordinary justification for the delay. Rule 1925(a) Opinion, 7/9/25, at 11 (unnumbered).

While Appellant's suppression motion was, in fact, untimely filed, we decline to reject Appellant's claims on that basis. The Commonwealth did not object to Appellant's late filing. Moreover, the trial court conducted a

suppression hearing—albeit a brief one—before the start of jury selection. During the hearing, the Commonwealth offered the testimony of Officer Barrett; Attorney Nudi had the opportunity to cross-examine Officer Barrett; both parties presented argument; and the trial court denied the suppression motion on the record. Thus, under these circumstances, we cannot agree that the trial court "declin[ed] to schedule a hearing or entertain the suppression motion on the eve of trial." *Id.*

In the alternative, the trial court concluded that Officer Barrett was authorized to act outside his primary jurisdiction under section 8953(a)(5)[6] because the traffic stop was based on public safety concerns. *Id.* at 12 (unnumbered); *see also id.* (stating that Officer Barrett learned there was an active warrant for Appellant's arrest and a caution flag for violent tendencies). However, the Commonwealth argues, and we agree, that section 8953(a)(5) is not applicable because the observed traffic violation was not a felony or misdemeanor. *See* Commonwealth's Brief at 10. Additionally, as the

---

[6] Section 8953(a)(5) permits a municipal officer to enforce the laws beyond his primary jurisdiction where he

> is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S.A. § 8953(a)(5).

Commonwealth correctly points out, Officer Barrett did not provide any testimony at the suppression hearing to substantiate the court's reliance on the existence of an active warrant. *See id.*; *see also Barr*, 266 A.3d at 39. We nevertheless agree that suppression was not warranted in this case. *See Commonwealth v. Thomas*, 340 A.3d 1053, 1058 (Pa. Super. 2025) (stating that this Court may affirm a trial court's decision on any basis that is supported by the record).

As previously stated, the MJPA permits an extraterritorial stop and arrest if the officer is in "hot pursuit" of a person who committed an offense within the officer's primary jurisdiction and the officer "continues in fresh pursuit of the person after the commission of the offense." 42 Pa.C.S.A. § 8953(a)(2). This exception requires both "hot pursuit" and "fresh pursuit." *Commonwealth v. Peters*, 965 A.2d 222, 225 (Pa. 2009). Our Supreme Court has explained that

> "hot pursuit" and "fresh pursuit" require some sort of investigation and tracking of the perpetrator and that that pursuit be immediate, continuous and uninterrupted.

*Id.*

Here, Officer Barrett testified that on October 23, 2024, he was on patrol in the Shenango Park Apartments in the city of Hermitage. N.T. (suppression), 3/12/25, at 4. Officer Barrett saw "a strange vehicle" that "[he] didn't recognize" parked in the parking lot. *Id.* at 7; *see also id.* at 8 (Officer Barrett indicating he recognized the other vehicles in the parking lot at that

time).  Officer Barrett testified that Appellant was standing near the vehicle's open driver side door.  *Id.* at 7.  Officer Barrett then performed a check of the vehicle's license plate number, which revealed the vehicle was registered to Appellant and Cornelious.  *Id.* at 4, 9.  Further, Officer Barrett learned that Appellant had a Pennsylvania photo identification card, but no driver's license.  *Id.* at 10.

A few minutes later, Officer Barrett observed the vehicle exit the Shenango Park Apartments parking lot to Rombold Road.  *Id.* at 5, 11.  Officer Barrett followed behind the vehicle, which turned left onto Mercer Avenue.  *Id.* at 5, 12.  Officer Barrett clarified that he knew Appellant did not have a driver's license at the time he first observed him in the Shenango Park Apartments parking lot, *i.e.*, while both he and Appellant were in Hermitage.  *Id.* at 11; *see also id.* at 12 (Officer Barrett indicating he followed Appellant's vehicle based on the information that Appellant did not have a license).  Additionally, Officer Barrett testified that he contacted police dispatch to relay his location while he was in the city of Hermitage.  *Id.* at 17; *see also id.* (Officer Barrett stating, "I don't turn my lights … on until that is done, make sure the dispatch hears where I am, the vehicle and everything.").  Officer Barrett indicated that he was likely in the city of Farrell when he activated his lights.  *Id.* at 5-6, 17-18.

At approximately 10:40 p.m., Officer Barrett initiated the traffic stop near the intersection of Mercer Avenue and Sharon New Castle Road, which is

located in the city of Farrell.  *Id.* at 5, 12, 15.  Officer Barrett explained that the portion of Mercer Avenue that Appellant traveled is a "very windy and narrow road[.]"  *Id.* at 5; *see also id.* at 12 (describing a bend in the roadway).  Officer Barrett testified that due to the bend in the road, as well as an incline in the road, he pulled Appellant over into a "well-lit open parking lot right around the corner" of Mercer Avenue and Sharon New Castle Road. *Id.* at 16; *see also id.* at 12 (Officer Barrett stating, "[I]t's a lot safer for me and [Appellant] as well.").

The suppression record therefore established that Officer Barrett observed the traffic infraction in the city of Hermitage; observed Appellant exiting the Shenango Park Apartments parking lot and turn onto Rombold Road; exited the parking lot shortly after Appellant; communicated his location to dispatch while in the city of Hermitage; and followed Appellant's vehicle until he reached a safe location to activate the cruiser's lights and initiate a stop in the nearby city of Farrell.  Officer Barrett conducted an investigation by checking the vehicle's registration and identifying Appellant as an individual who was not licensed to drive.  Officer Barrett then tracked Appellant by following his vehicle, and his pursuit of Appellant was "immediate, continuous and uninterrupted" until he initiated the traffic stop. *Peters*, 965 A.2d at 225.  Thus, the requirements of the hot and fresh pursuit exception under section 8953(a)(2) of the MPJA were satisfied.  *See id.* (concluding hot and fresh pursuit exception was satisfied where the appellant

struck a telephone pole in one jurisdiction and fled; the appellant's abandoned truck was located one-half mile away in the neighboring jurisdiction; both police agencies investigated the accident together; and officers from the first jurisdiction arrested the appellant at his home, located in the second jurisdiction); *see also Commonwealth v. Parker*, 273 A.3d 1070, 947 WDA 2021 (Pa. Super. 2022) (unpublished memorandum)[7] (concluding the MPJA's hot and fresh pursuit exception applied where the officer responded to a report of a hit-and-run accident; at the scene of the accident, the officer spoke to the victim, viewed video footage, and identified the offending vehicle's license plate number; the officer checked in with the Pennsylvania State Police (who covered the jurisdiction) and responded to the registered owner's home in a neighboring jurisdiction within an hour after the accident; and, while continuing his investigation at the registered owner's home, the officer developed probable cause to believe the appellant was intoxicated).

Moreover, Officer Barrett's brief incursion into the nearby jurisdiction of Farrell to complete the vehicle stop did not frustrate the purpose of the MPJA. *See Lehman*, 870 A.2d at 821 (emphasizing the intent of the MPJA is to enable protection of the public while maintaining municipal police officers' accountability to local authority); *see also Chernosky*, 874 A.2d at 130 ("The purpose of the MPJA is to proscribe investigatory, extraterritorial forays used

---

[7] Unpublished, non-precedential memoranda of this Court filed after May 1, 2019, may be cited for their persuasive value. Pa.R.A.P. 126(b).

to acquire additional evidence that does not yet exist."). Officer Barrett had witnessed the offense while he was within his primary jurisdiction. His entry into the city of Farrell's jurisdiction was brief, and was intended only to complete the vehicle stop in a safe location. *See Chernosky*, 874 A.2d at 129 (concluding officer's extraterritorial arrest did not violate the MPJA, where the officer "was attempting to protect the public with a minimal incursion into the neighboring jurisdiction when the Motor Vehicle Code infractions were committed within his jurisdiction immediately before he left it. His actions were reasonable[;] he did not engage in a fishing expedition[;] and he was not attempting to expand his power.").

Based upon the foregoing, we conclude the suppression court did not err in denying Appellant's suppression motion. We therefore affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/19/2026

- 14 -